THE STATE *ex rel.* WOLFE v. BRONSON *et al.*

In Banc, March 25, 1893.

1. Constitution: STATUTE: SINGLE SUBJECT. Where all the provisions of a bill have a natural relation and connection, the subject is single within the requirement of the constitution (Art. 4, Sec. 28), and this is the case although the bill contains many provisions.

2. ———: ———: TITLE. So it is sufficient, within the requirement of the constitution (Art. 4, Sec. 28), that the single subject of the bill shall be clearly expressed in the title, that the title fairly embrace the subject-matter covered by the act, mere matters of detail being omitted.

3. ———: ———: ———. The fact that the title is broader than the act is not objectionable unless the title is comprehensive enough to admit of disconnected and incongruous subjects. (BARCLAY, J., *dissenting.*)

4. ———: ———: ———: SCHOOL BOOK COMMISSION ACT. The title of the legislature of May 4, 1891 (Acts, p. 26), viz.: "An act to establish and maintain a uniform course of text books to be used in all the public schools within this state, and to reduce the price thereof," *held*, sufficient, although section 11 of the act excludes from its operation cities and districts having more than one hundred thousand inhabitants.

5. ———. ———. The provision of the act authorizing the appointment of a school book commission which was required to select text books on specified subjects, and to make contracts for supplying the pupils with such books is not unconstitutional, because an invasion of the duties of "supervision of instruction" vested in the state board of education by the constitution (Art. 11, Sec. 4.)

6. Parties: MANDAMUS. A proceeding by *mandamus* in the name of the state at the relation of the school book commission is proper under section 9 of said act to compel the directors of a school district to introduce and put in use in their district the text books selected and contracted for by the commission.

*Mandamus.*

MOTION TO QUASH ALTERNATIVE WRIT DENIED.

*Geo. P. B. Jackson, Edward Robb* and *John M. Wood,* Attorney General, for petitioner.

(1) The act of April 4, 1891, is not unconstitutional as being in contravention of section 4, article 11 of the constitutiion. *First.* The constitutional provision is not self-executing, and is "inoperative until aided by legislation," and "is operative only to the extent the supplemental legislation imparts vitality." Cooley's Constitutional Limitations [6 Ed.] 98, *et seq.; Brown v. Seay,* 5 South. Rep. (Ala.) 216; *Fusz v. Spaunhorst,* 67 Mo. 256; *Householder v. City of Kansas,* 83 Mo. 488; *Board v. Patton,* 62 Mo. 444; *People v. Commissioners,* 15 Mich. 347; *State v. Ah Jim,* 23 Pac. Rep. (Mon.) 76. *Second.* The terms of the constitutional provision are not exclusive, and there is nothing to prevent the legislature from conferring certain specified powers relative to the public schools of the state on another body. *People v. Commissioners,* 15 Mich. 347. (2) There is but one general subject in the act and that is fairly expressed in its title. In adopting a title the legislature may select its own language, and may use few or many words. It is sufficient that the title fairly embraces the subject-matter covered by the act; mere matters of detail need not be stated in the title. *State ex rel. v. Miller,* 100 Mo. 445; *State v. Burgdoerfer,* 107 Mo. 1; *State ex rel. v. Ransom,* 73 Mo. 86; *City v. Payne,* 71 Mo. 159; *State ex rel. v. Mead,* 71 Mo. 266; *City v. County of Marion,* 69 Mo. 574; *In re Burris,* 66 Mo. 446; *State v. Matthews,* 44 Mo. 523. (3) The relator is a proper party to the proceeding under section 9 of the act.

*G. W. Barnett* and *Sangree & Lamm* for respondents.

(1) The act of the general assembly creating a school book commission and giving it certain duties

and powers is inoperative, unconstitutional and void. Constitution, art. 11, sec. 4.    The supervision of instruction in our public schools being vested by the constitution itself in a "Board of Education," the characteristic duties and powers of that board cannot be taken from it or delegated to others or impaired or frittered away directly or indirectly or required of any other officer or authority by legislative act.    *State ex rel. v. Brunst*, 26 Wis. 412; *State v. Hastings*, 10 Wis. 525; *Warner v. People*, 2 Denio, 272; *McCabe v. Mazzuchelli*, 13 Wis. 478; *People v. Albertson*, 55 N. Y. 50; *Howard v. State*, 10 Ind. 99; *People v. Raymond*, 37 N. Y. 428; Cooley's Constitutional Limitations [6 Ed.] p. 79.    (2) The motion to quash the alternative writ of *mandamus* should also be sustained because the writ is too broad and commands and demands more than relator is entitled to under the law, if all the facts stated in the alternative writ are true.    If such writ is directed to two persons and cannot be sustained as to one, it must be denied as to both.    *People v. Yeates*, 40 Ill. 126.    The writ is issued against respondent A. J. Smith as "superintendent of schools in said district" when there is no such officer known to the law.    The commands of the alternative writ are too broad because they require the introduction of *all* the books adopted by the commission into *all* the schools of the district regardless of the grades, of the ages or the advancement of the pupils at the time.    (3) The relator is not entitled to the remedy sought under section 9 of the act in question.    This is not a proceeding to enforce a contract but to compel compliance with an alleged law.    (4) The alternative writ does not state facts which, if true, would entitle relator to a peremptory writ and the relief sought.    The writ does not state a demand on the part of the relator or anyone in

his behalf, and a refusal on the respondents' part to use the adopted books or exclude the others. These are material prerequisites to the extraordinary relief by *mandamus*. Moses on Mandamus, p. 204; *Chance v. Temple*, 1 Iowa, 179; Tappan on Mandamus, pp. 282, 287, and authorities cited; *People v. Hyde Park*, 117 Ill. 462; *Hardee v. Gibbs*, 50 Miss. 802; *Talcott v. Harbor Com'rs*, 53 Cal. 199; *State v. Lebre*, 7 Rich.. (S. C.) 234; *State v. Davis*, 17 Minn. 429; *State v. Governor*, 1 Dutch (N. J.), 331; *Condit v. Newton Co.*, 25 Ind. 422; *Kemerer v. State*, 7 Neb. 133; *People v. Whittemore*, 4 Mich. 27; *Dobbs v. Stauffer*, 24 Kan. 12; *Bryson v. Spaulding*, 20 Kan. 427. A party desiring to avail himself of the provisions of a public statute is required to state facts which bring his case clearly within it. *Reynolds v. Railroad*, 85 Mo. 90. Performance of a condition precedent must be alleged or an excuse given for its non-performance. *Basye v. Ambrose*, 32 Mo. 484; *Bersch v. Sander*, 37 Mo. 104; *Josse v. Newman*, 38 Mo. 43.

BLACK, J.—This case is now before us on a motion to quash an alternative writ of *mandamus* issued by this court. The relator is the state superintendent of public schools acting in his official capacity of *ex officio* member and president of the Missouri School Book Commission; and the respondents are the directors of the city of Sedalia school district.

The Missouri school book commission, created and organized under the act of April 4, 1891 (Acts of 1891, p. 26), advertised for and received and accepted bids and made contracts with different publishers for furnishing a course of school books for the period of five years, upon the subjects or branches of learning specified in section 5 of that act. The respondents have not used this course of books, but have adopted and

put in use in their district a different series; and the object of this proceeding is to compel them to introduce and put in use in their district the text-books selected and contracted for by the commission.

The act of April 4, 1891, is entitled, "An act to establish and maintain a uniform course of text-books to be used in all the public schools within this state, and to reduce the price thereof." In its general scope, it provides for the appointment of the commission, the method of advertising for and receiving bids, the selection of a series of books covering the specified subjects, and the making of contracts with the publishers for furnishing the books at the contract price. The fifth and eleventh sections are in these words:

"Section 5. If any of said bids be satisfactory to the commission then it shall proceed to select the cheapest and best course of text-books so offered, as follows, to-wit: Chart, reading, spelling, English grammar, arithmetic; geography, history, civil government, physiology and penmanship."

"Section 11. From and after the first day of September, 1891, no text-book upon the subjects named in section 5 of this act, except those contracted for by said commission, shall be sold for use in the public schools of Missouri; and, from and after the first day of September, 1892, no text-book upon the aforesaid subjects, except those contracted for by said commission, shall be used or taught in any public school within this state: *Provided*, that this act shall not apply to any city or district which now contains or may hereafter contain more than one hundred thousand inhabitants."

1. The respondents say this act is void, because it violates section 28 of article 4 of the constitution, which provides that: "No bill * * * shall contain more than one subject, which shall be clearly expressed

in its title.'' This constitutional provision has been the subject of much observation in recent years as will be seen from the following cases: *State ex rel. Attorney General v. Miller*, 100 Mo. 439; *State, etc., v. County Court*, 102 Mo. 531; *State v. Burgdoerfer*, 107 Mo. 1; *State v. Morgan*, 112 Mo. 202.

These and other cases show that this section of the constitution is to be reasonably and liberally construed and applied, due regard being had to its object and purpose. It was designed to prevent the insertion of disconnected matters in the same bill. The section asserts only two propositions. The first is that no bill shall contain more than one subject, and the second is that this single subject must be clearly expressed in the title. If all the provisions of the bill have a natural relation and connection, then the subject is single, and this too though the bill contains many provisions. As to the second proposition, namely that the single subject must be clearly expressed in the title, it is sufficient to say that the legislature may select its own language, and may use few or many words. It is sufficient that the title fairly embraces the subject-matter covered by the act; mere matters of detail need not be stated in the title.

Now the precise point of objection here is, not that this act contains more than one subject, but that the subject is not clearly expressed in the title in this, that the title indicates a law relating to *all* the public schools in the state, while the act itself excludes from its operation cities and districts having more than one hundred thousand inhabitants. In other words the objection is that the title is broader than the act itself. The constitution does not say the title shall be as narrow as the act. What it says on this point is, that the single subject shall be clearly expressed in the title. The fact therefore that the title is broader than the act can be

no objection, unless the title is comprehensive enough to admit of disconnected and incongruous subjects. Says Cooley: "The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." Cooley on Constitution Limitations [6 Ed.] 172. The fact that the title speaks of "all the public schools within this state," while the proviso to section 11 excludes from the operation of the act cities and districts having more than one hundred thousand inhabitants, does not make the law unconstitutional.

2. It is next objected that the act is void because it violates section 4 of article 11 of the constitution which provides: "The supervision of instruction in the public schools shall be vested in a 'Board of Education,' whose powers and duties shall be prescribed by law. The superintendent of public schools shall be president of the board. The governor, secretary of state and attorney general shall be *ex-officio* members, and with the superintendent, compose said board of education." The line of argument pursued by the objectors is that this section vests absolutely in the state board of education all powers of supervision of instruction over the public schools; and, while the legislature may require duties of such character to be performed, it cannot delegate the performance of them to any other board.

It is not necessary to a disposition of this case to say just how far or to what extent the legislature may impose supervisory powers upon other boards or officers, for, if the duties devolved upon the school-book commission are not within the fair meaning of the words "the supervision of instruction" as used in the constitution, then the objection must fall to the ground.

Now, in the government of the public schools, we have school directors, a county commissioner of public schools in some counties and a county superintendent in others, conductors of the teachers' institutes, a board of regents for each normal school, a superintendent and the state board of education. With such a general system of public schools it must be evident that when the constitution says the supervision of instruction shall be vested in the state board of education, it does not mean that this board shall enter into the details of giving instruction or carrying on the schools. All this is and may be left to subordinate officers. It means no more than a general oversight over the matter of instruction.

Looking now to the act in question we see that the Missouri school-book commission does not determine what subjects or branches shall be taught in the public schools. What that commission is required to do is to select the best and cheapest course of text-books covering the subjects specified in the fifth section, and to make contracts with the publishers for furnishing the books so selected and purchased. This board is, in substance and effect, the purchasing agent for the state, with power to select the books covering specified subjects. It does not possess the power to say what subjects shall or shall not be taught, but it does possess the power to select the books to be used in teaching the given subjects and to make contracts for supplying such books to the pupils. To call such powers "the supervision of instruction" within the meaning of those words as used in the constitution is carrying the matter into the field of absurdity. It might just as well be said that the state board of education must discharge the duty of examining school teachers. Formerly the duty of selecting text-books devolved upon certain school officers in each county (sections

7087 to 7089, Revised Statutes, 1879); and prior to that the township boards of education had the power to determine the books to be used (section 16, p. 261, Revised Statutes, 1865). Section 3 of article 9 of the constitution of 1865 was for all present purposes the same as the section of the constitution of 1875 now under consideration. These different laws show a continued contemporaneous construction placed upon the constitutional provisions not to be disregarded. Our conclusion is that the act in question is in perfect accord with the present constitution.

3. The further claim of the respondents is that this proceeding should be prosecuted in the name of the state under section 630, Revised Statutes, 1879, and that the relator as an *ex-officio* member and the president of the school-book commission has no right to institute or prosecute this suit.

The ninth section of the act in question provides: "After the commission shall have entered into such contract or contracts and shall have discharged all the duties as are herein provided for, then it shall be the specific duty of the president of said commission to see that all the provisions of said contract or contracts are faithfully carried out." The contention that this section means no more than this, that the president of the commission must see that the publishers carry out their part of the contract, cannot be sustained. The contracts are not before us, but the law enters into and constitutes a part of them. By the law the publishers agree to furnish the particular books for the whole state, a few cities excepted; and on the other hand the state agrees to use the books so contracted for to the exclusion of all others upon the same subjects and grades. The meaning of section 9 is that the president shall see that the obligations of all parties to the contracts are faithfully carried out. The president of

the school-book board being specially charged with this duty, this proceeding is properly prosecuted in the name of the state at his relation.

4. We do not stop to make particular mention of the many other questions made in the brief of the respondents. They do not affect the merits of this case. What we hold now is that the present relator has the right to prosecute this proceeding, and that the act of April 4, 1891, is constitutional and must be obeyed. The motion to quash is overruled, and leave is granted to the respondents to make return within ten days after the filing of this opinion, and the relator will plead thereto within five days after the expiration of the time given to make return. All concur except BARCLAY, J., who dissents.

BARCLAY, J. *(dissenting.)*—Missouri's constitution declares that no legislative act, such as that now before the court, shall "contain more than one subject, which shall be clearly expressed in its title." Constitution, 1875, art. 4, sec. 28.

The act in question is entitled: "An act to establish and maintain a uniform course of text books to be used in all the public schools within this state, and to reduce the price thereof." But in section 11 it is *"provided,* that this act shall not apply to any city or district which now contains or may hereafter contain more than one hundred thousand inhabitants."

The courts take notice of the population of localities as ascertained by the United States census *(State ex rel. v. County Court* (1886), 89 Mo. 237), so that we know officially that by this proviso the public schools of Kansas City and of the city of St. Louis are excepted from the operation of the law, though the title expressly declares it applicable to "all the public schools within this state."

That the above provision of the constitution is mandatory, demanding enforcement by the courts as well as observance by the legislative department, is a proposition too firmly established to require argument. *State v. Miller* (1870), 45 Mo. 495; *Durkee v. Janesville* (1870), 26 Wis. 697.

The tendency of judicial rulings in Missouri certainly has been to give it a reasonable and liberal interpretation, so as not to embarass legislative action beyond the express requirements of the organic law. Few enactments have been adjudged in conflict with it, yet enough to indicate that it is not to be frittered away by construction.

The constitutional mandate has several obvious purposes, among them one is to prevent the legislature, as well as the people, from being misled. *Davies v. Board* (1891); 89 Mich. 302; *McDuffie v. State* (1891), 87 Ga. 687; *In re Breene* (1892), 14 Colo. 401. The traditional history of its origin points to that purpose as the main one in view when it was first adopted. *Savannah v. State* (1848), 4 Ga. 38. No doubt it has other objects too, but this is the one which bears most directly on the case at hand. The title must "clearly express" the subject in order that members of the general assembly may readily learn the scope of each proposed bill, and that citizens who follow legislative proceedings may have some slight notice of the purport of pending measures.

Whatever may be the full meaning of this command, it seems to me very clear that it was never designed to sanction legislation for the schools of three fourths of the people of Missouri, under a title purporting to apply to "all the public schools within this state."

In requiring the subject to be "clearly expressed," the constitution certainly meant to assert that the sub-

ject should, at least, not be misrepresented in the title. Is the subject-matter expressed ("clearly" or otherwise) by a title which describes the contents and scope of the act to be different from what they are? The question implies its answer.

The case here is not one of mere vagueness of title or generality in the description of the matter contained in the body of the law. The title proclaims that the act relates to all public schools in the state, when in fact it does not. The title is misleading. It flatly contradicts the language of the act in respect of the matter constituting the substance of the legislation. It affords a plain illustration of the very evil which the constitutional provision was designed to prevent.

In other jurisdictions similar views have been taken of this subject. Thus in New Jersey, where the constitutional language on this point is less positive than here (the word "clearly" is there wanting), an act entitled: "To fix and regulate the salaries of city officers in cities of this state," was held void because the terms of the statute applied to one city only, contrary to the intimation in the title. *Coutieri v. New Brunswick* (1882), 44 N. J. Law, 58.

In Louisiana, an act "to enforce labor contracts," etc., was adjudged unconstitutional, in that the body of the law punished the violation of all contracts, not merely "labor contracts" as the title declared. *State v. Pierson* (1892), 10 South. Rep. (La.) 400. See also *Taylor v. Kirby* (1889), 31 Ill. App. 658; *Wulftange v. McCollom* (1885), 83 Ky. 361, and *Hyman v. State* (1888), 87 Tenn. 109.

These decisions emphasize the principle that the title must not mislead. If it does, the act necessarily gives way to the superior authority of the fundamental law which forbids the false label.

However beneficial the purpose sought by the legislation under review, it cannot be considered to dispense with the observance of those forms which the people, in their sovereign power for reasons satisfactory to them, have seen fit to prescribe as essential to the proper expression of their will. We are not at liberty to set aside their command, nor should we do so by indirection in so interpreting their language as to reduce it to a dead letter.

While every reasonable intendment should be made to support the validity of acts of the general assembly, it is nevertheless our duty to give effect to the organic law, and, in case of a departure from it, to so declare on a proper occasion.

This act, in my opinion, is void for the reason above indicated (irrespective of any other criticism to which it may be justly subject). The motion to quash should be sustained.