[Civ. No. 791.   Third Appellate District.—March 13, 1911.]

## J. D. McCARTHY, Appellant, v. BOARD OF SUPERVISORS OF THE COUNTY OF MERCED et al., Respondents.

COUNTIES—POWER OF SUPERVISION—CONSTRUCTION OF STEEL BRIDGE— REJECTION OF BIDS—AUTHORITY TO COUNTY SURVEYOR—RESPONSIBILITY.—Where bids have been made for the construction of a steel bridge for a county, and the county surveyor has advised the board of supervisors of the county that the bridge can be constructed for a less sum than the lowest bid, such board has power under subdivision 4 of section 4041 of the Political Code to reject all bids, and to authorize the bridge to be constructed by days' work under the supervision and control of the county surveyor, he being responsible on a bond that its cost shall not exceed the amount of the lowest bid.

ID.—DELEGATION OF AUTHORITY—LEGISLATIVE POWER.—The power conferred upon the county surveyor is not an unwarranted delegation of power by the board of supervisors, but they are acting under express power conferred upon them by the legislature to authorize the county surveyor to construct the bridge. The legislature is the source of all power in the premises; and the power of the board comes from its act. The authority that confers power can change or modify it; and the matter is for the legislature, and not for the courts.

ID.—SPECIFIC POWER TO SURVEYOR TO CONSTRUCT BRIDGE NOT INCONSISTENT WITH GENERAL POWER OF ROAD OVERSEER.—The specific power conferred upon the county surveyor to construct a bridge is not inconsistent with the general power conferred upon road overseers in their respective districts over roads and bridges, and the repair thereof, when necessary.

ID.—POWER CONFERRED ON SURVEYOR NOT FORBIDDEN BY CODE AS CONTRACTUAL.—The power and additional duty conferred upon the county surveyor is not forbidden as contractual by section 4074 of the Political Code, forbidding a county officer, except for his own services, to present a claim against the county, or in any way except in the discharge of his official duty to advocate a claim against it. The official compensation of the surveyor, if he has a salary, is not increased by reason of such additional duty; and if he is paid by fees, he can have only the statutory fees allowed for his actual work. This is not unlawful, or against public policy.

ID.—POWER OF LEGISLATURE TO PRESCRIBE DUTIES OF COUNTY SURVEYOR NOT INTERFERED WITH.—The ordinary duties of the county surveyor

are set forth generally in sections 4214 to 4220, inclusive; but it is held that these ordinary duties are not interfered with by the legislature in providing for the conferring upon him the additional duty prescribed in subdivision 4 of section 4041. of the same code, which is not out of harmony with the nature of the services which the county surveyor should be specially qualified to perform.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

F. G. Ostrander, and J. J. Griffin, for Appellant.

H. S. Shaffer, and F. W. Henderson, for Respondents.

BURNETT, J.—The action was brought in the superior court of the county of Merced to restrain defendants from constructing a steel bridge over the Merced river in said county.

The court below sustained a demurrer to the complaint for the insufficiency of the facts to constitute a cause of action. Plaintiff declined to amend his complaint, and judgment was thereupon rendered in favor of defendants and plaintiff has appealed.

The facts alleged in the complaint, which we deem necessary for an understanding of the case, are as follows: A petition of the taxpayers of said county was presented to the board of supervisors of said county praying for the construction of a bridge at a certain point over Merced river, in Merced county. At a regular session of said board, held on the 9th of July, 1909, an order was duly made by said board directing the county surveyor to submit plans and specifications for the construction of a steel bridge at the designated point and to have the plans ready for the next regular meeting of said board in July. The plans and specifications were prepared by the surveyor and submitted to the board, and were regularly accepted and adopted by said board on July 19, 1909. The board thereupon ordered the clerk of said board to advertise for bids for the construction of said bridge in accordance with the plans and specifications that were adopted. This was done, and certain bids were received and

15 Cal. App.—37

they were opened and inspected by said board. At the same session of the board the county surveyor advised said board that said bridge could be constructed for a sum less than the amount of the lowest bid, and thereupon the said board refused to award the construction of said bridge to the lowest responsible bidder, or to any bidder, and rejected all the bids and adjourned without taking further action as to the construction of the bridge. Thereafter, at a special session, held on October 6, 1909, called for the purpose of considering the construction of said bridge by days' work under the direction and control of said county surveyor, the board unanimously adopted a certain resolution which, after reciting the circumstance of the opening of the bids and the advice of the county surveyor, "ordered that A. E. Cowell, surveyor of Merced county, be and he is hereby authorized and directed to proceed and construct said bridge by days' work according to his plans and specifications, and to purchase all necessary material for the same. . . . The said defendant A. E. Cowell, pursuant to the order of said board, is proceeding, and threatens to continue to proceed, to construct said bridge, and to contract for labor, material and supplies necessary for the construction of said bridge, and the said board of supervisors and the members thereof are aiding and advising the said A. E. Cowell in the construction of said bridge and in contracting, and providing funds, for said supplies, labor and materials out of the funds of said county and road district and threaten to continue to so aid and advise said Cowell and provide for said funds." The said bridge will exceed in cost of construction the sum of $500.

Respondents claim that authority for their action is found in the language of subdivision 4 of section 4041 of the Political Code. This is a part of the enumeration of the general powers of the boards of supervisors in their respective counties, and it relates specifically to the maintenance, control, construction, etc., of public roads, turnpikes, ferries, wharves, chutes and bridges within the county, and it provides that "when the cost of the construction of any bridge, wharf, chute, or other shipping facilities that may be built under the provisions of this subdivision exceeds the sum of five hundred dollars they must cause to be prepared and must adopt plans and specifications, strain-sheets and working details, and must

advertise for bids for the construction of such bridge, wharves, chutes or other shipping facilities, unless otherwise provided by law, in accordance with the plans and specifications so adopted. All bidders shall be afforded opportunity to examine such plans and specifications and said board shall award the contract to the lowest responsible bidder . . . provided, that after the submission of the bids as herein provided, the board of supervisors being advised by the county surveyor that the work can be done for a sum less than the lowest responsible bid, it shall then be their privilege to reject all bids and to order the work done or structure built by days' work under the supervision and control of the said surveyor; provided further, that the surveyor in such cases shall be held personally responsible (under his official bond to construct said bridge or structure) according to his plans and specifications at a cost not to exceed the amount of the lowest responsible bid received." It is perfectly apparent that the board did not exceed the privilege granted by said section unless in the command and direction to the surveyor to purchase material for the said structure, but even in this particular we are of the opinion that the action of the board was entirely within the purview of said provision. The work is to be done, not simply under the "supervision," but also under the "control" of the surveyor. "Supervision" implies oversight and direction. "Control" must have been used to authorize additional power, such as is contained in one of its definitions, "to exercise a restraining or governing influence over, to regulate." How could the surveyor govern or regulate the construction of the bridge without a supervision over the employment of labor and the purchase of material? He could supervise the structure by directing its completion in accordance with the plans and specifications. He could not "control" it without a directing power as to the cost. This power manifestly could not be exercised without the privilege of employing the labor and purchasing the material. This view, that it was the intention of the legislature in the contingency mentioned to clothe the surveyor with the ample power suggested, is strengthened and confirmed by a consideration of the purpose of this alternative plan and of the bond required of the surveyor to do the work in accordance with his advice to the board. The scheme was devised to protect the county

against collusion on the part of bidders or the payment of exorbitant charges for such public improvements. To indemnify the county against loss in consequence of the award to the surveyor, he is required to give a bond to construct the bridge at a sum not to exceed the lowest bid. It must be apparent that no surveyor, without the privilege of hiring the labor and purchasing the material, would enter into such an undertaking. By the construction contended for by appellant, the manifest purpose of the law would therefore be defeated.

We can see nothing in the position of respondents that implies an unwarranted delegation of authority on the part of the supervisors. In fact, there is no delegation of authority whatever by the supervisors. The power of the board comes from the act of the legislature. It may be admitted that, independent of the provision in question, the legislature has empowered the board of supervisors to let the work to the lowest responsible bidder or to do it themselves. But the authority that confers power can withhold or withdraw it. It may take it away from one and confer it upon another, unless, of course, there is some constitutional barrier. As to the power of the legislature, Judge Redfield says: "It has never been questioned that the American legislatures have the same unlimited power in regard to legislation which resides in the British parliament, except where they are restrained by written constitutions. That must be conceded, I think, to be a fundamental principle in the political organization of the American states. We cannot well comprehend how, upon principle, it should be otherwise. The people must, of course, possess all legislative power originally. They have committed this, in the most general and unlimited manner, to the several state legislatures, saving only such restrictions as are imposed by the constitution of the United States or of the particular state in question." (*Thorpe* v. *Rutland etc. R. R. Co.*, 27 Vt. 142, [62 Am. Dec. 625].) Indeed, there is, in our own constitution (art. XI, sec. 5) a specific command that "The legislature by general and uniform laws shall provide for the election or appointment in the several counties of boards of supervisors, sheriffs, county clerks, district attorneys and such other county, township and municipal officers as public convenience may require, and shall prescribe their duties and fix their

terms of office.'' In harmony with this mandate, the legislature has prescribed the duties of the supervisors and at various times has amended certain provisions of the statute, and in 1907 (Stats. 1907, p. 367) was added this clause whereby in a certain contingency it was made the duty of the county surveyor to do the work therein prescribed. It is true that the board is not deprived of all discretion in the matter. The law contemplates that the supervisors shall act, of course, for the best interest of the public. It is fitting that they should be advised by the county surveyor who is presumably particularly qualified for that duty. They may reject his advice or they may supplement it by independent investigation, but when they have ordered the surveyor to do the work, the legislature has given him express authority and made it his duty to comply with said order. In brief, the case is this: The legislature is the source of all power in the premises. In the first instance, it authorized the board of supervisors to have complete control over the work. Subsequently it modified this grant of power by authorizing, in a certain contingency, the county surveyor, when directed by the board, to perform this public duty. The matter is for the legislature and not for the courts.

There is no inconsistency between this provision and the succeeding one providing that the road commissioners or road overseers in their respective districts ''shall employ all labor required and direct the conduct of work of any kind upon any and all public roads,'' or section 2645 of the Political Code, providing that ''Road commissioners, under the direction and supervision and pursuant to orders of the board of supervisors, must: 1. Take charge of the highways within their respective districts, and shall employ all men, teams, watering-carts, and all help necessary to do the work in their respective districts when the same is not let by contract.'' The section before us provides for an exceptional, the other sections for the ordinary, condition; the former is specific, the latter general in their operation. Manifestly, the road commissioner has general supervision over the roads, including the bridges, and he must attend to repairs and to the many details required to keep the highways in proper condition. But by this later specific provision the duty of the road commissioner has been modified somewhat in a particular instance, and, reading these

various sections together, it is easy to give effect to all of them without violating any principle of construction and to reach the conclusion that, in special cases requiring bids, the work may be let by the board of supervisors to the lowest responsible bidder, or, to save expense, it may be done under the direction and control of the county surveyor.

Nor do we see anything herein inconsistent with section 4074 of the Political Code, providing that "no county officer shall, except for his own services, present any claim, account or demand for allowance against the county, or in any way except in the discharge of his official duty advocate the relief asked in the claim or demand made by any other." The contention is that the said arrangement constitutes a contract between the supervisors and the county surveyor, and therefore prohibited by the above-mentioned provision. But we do not understand that there is any such contractual relation as the statute contemplates. Under the circumstances mentioned it rather becomes the official duty of the county surveyor to perform the work. He is to derive no profit therefrom, and the only compensation he can receive is the fee fixed by the law for his services. In other words, it seems plain that by virtue of this provision an additional duty is cast upon the county surveyor without any increase whatever of his compensation in those counties where he is paid a salary for his entire official service and in other counties with simply an allowance of the legal fee for his actual work. Herein, as we view it, there is nothing opposed to the letter or spirit of the law or in contravention of sound public policy.

To the suggestion that respondents' construction of the law is likely to encourage great abuse and afford an attractive allurement for designing county surveyors, it is sufficient to say that the presumption is that public officials will do their duty, although, admittedly, under any administrative scheme or system, gross wrong will sometimes be perpetrated against the public by dishonest men in official station.

Neither is it a fair interpretation of the law to hold that it deprives the legislature of any part of its power to prescribe the duties of the county surveyor. These duties are set forth generally in sections 4214 to 4220, inclusive, of the Political Code, but the legislature, by the provision before us, as before mentioned, has added an additional duty to be performed

when directed by the board of supervisors. Nor in the work required is there anything so foreign to the general scope of the functions of the county surveyor as to compel the inference that said duty could not have been contemplated by the legislature. It is mostly, if not entirely, ministerial in its nature, and of such character that by training and experience the county surveyor should be specially qualified to perform it.

Even upon the theory of appellant that the board of supervisors alone has the power to purchase material for the construction of the bridge, it is doubtful whether the complaint stated a cause of action, in view of the allegation as to the board of supervisors ordering and advising the said A. E. Cowell in the construction of said bridge and in contracting therefor. If the supervisors are aiding and advising in the execution of the plan, it is not unreasonable to hold that Cowell is simply their agent in the purchase of the materials and in the employment of the labor. We would then have no more than what appellant says the legislature intended, that is, the selection of the county surveyor "to supervise the construction of a bridge when built by days' work to the end that it should be constructed according to the plans and specifications adopted." At any rate, after a consideration of all the points made by appellant, most of which we have mentioned, we are satisfied that they are more technical than substantial, and that the efforts of the officers in question to save the county expense should not be thwarted by the courts.

The judgment is affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 12, 1911.