STATE EX REL. CITY OF BUTTE ET AL., RELATORS, v. HEALY ET AL., RESPONDENTS.

(No. 7,721.)

(Submitted July 8, 1937. Decided July 10, 1937.)

[70 Pac. (2d) 437.]

*Mr. F. C. Fluent,* for Relators, submitted a brief, and argued the cause orally.

*Mr. John G. Brown* and *Mr. Philip O'Donnell,* for Respondents, submitted a brief, and argued the cause orally.

## Opinion: PER CURIAM.

Petition for writ of injunction. The State of Montana, on the relation of the City of Butte, a municipal corporation, and its mayor and city council, have brought this proceeding against the county surveyor, the county auditor, and the county treasurer of Silver Bow county. The relators assert that, pretending to act under the provisions of section 1760, Revised Codes, the respondents are proceeding to make certain described improvements and constructions upon the streets of the City of Butte and to order payment of the same without the acquiescence or authority of the city officials. They allege that there is now in the "city road fund" in the office of the county treasurer of Silver Bow county the sum of $33,407.30; that that sum is 50

per cent. of the net fees derived from the registration of motor vehicles under the provisions of subdivision (a) of section 1760, Revised Codes; that the respondent Jack Healy, as county surveyor of Silver Bow county, claims the right and power to use all such funds to construct permanent highways within the corporate limits of the above-named city independent of the city council or other city authorities, and that heretofore the city council and the county surveyor have agreed upon the streets to be improved and upon the type of work to be done.

The controversy resolves itself simply into a question of whose right and duty it is to expend the money involved and to direct the work and the payment of the same. In order to understand the situation it is necessary to have in mind certain provisions of section 1760, supra. The section provides in part as follows: "All license or registration fees collected by the county treasurer of the county in which any motor vehicle is registered shall be credited to the motor vehicle license fund of said county. The cost of making and mailing license plates and identification marks, certificates and other expenses of operating the motor vehicles department of the state of Montana shall be prorated by the registrar of motor vehicles among the counties of the state in proportion to the number of cars registered in each county, and he shall bill each county therefor, by verified claim, and each county shall thereupon pay the amount so charged out of said motor vehicle license fund; provided, however, that each county shall receive credit for its pro rata share of any fees paid to the registrar of motor vehicles, and provided further that the county treasurer shall retain ten per cent (10%) of all licenses fees in said motor vehicle fund until he has been billed by the registrar as aforesaid. The remainder of the funds in said motor vehicle license fund shall be used as follows:

"(a) Fifty per cent (50%) of the net fees derived from the registration of motor vehicles, the owners of which reside within the boundaries of any incorporated city of the state of Montana, having a population of thirty-five thousand (35,000), or more, according to federal census of 1930, shall be held by county treasurer and segregated from other county road funds and be

designated as 'city road fund,' to be used in city from which fees were derived for the construction of permanent streets within the incorporated limits of such city.

"(b) The fees held in the city road fund, as hereinabove provided, shall be used by the city council of such city having the population of thirty-five thousand (35,000), or more, according to the federal census of 1930, only for the construction of permanent highways and streets within the boundaries of such incorporated city. Provided, that all construction of public highways and streets, the cost of which is to be paid out of the fund derived from the license fees as herein provided, shall be under the supervision of the county surveyor of the county within whose boundaries such city is situated, subject to the control of the said city council and surveyor to designate the public highway or street upon which the work is to be done, and the type of pavement to be used, and provided further, that the cost of supervision of the county surveyor shall not exceed five per cent (5%) of the cost of said work."

The answer of respondents, and particularly of the county surveyor, admits most of the formal allegations of the petition, but alleges that heretofore all such work has been done under the direction of the county surveyor, and that the city has acquiesced therein, and that it is to the best interests of all concerned that the work be done in that manner. However, the answer asserts the right and the full power of the county surveyor to use all of such funds and to construct all permanent highway and street improvements contemplated under the proposed expenditure of the money now on hand. The answer further alleges an established administrative practice extending over the past two or three years and including several other street projects within the City of Butte.

It is unnecessary to discuss all of the various provisions of the statute involved, or all of the differing contentions of the interested parties. It is sufficient to say that we are now called upon to construe the provisions of section 1760, supra, heretofore quoted and to decide what they mean and how the funds under contemplation in such section must be expended. Briefly,

Has the county surveyor—as he and other county officials contend—absolute right and authority to spend the funds according to his best judgment, without regard to the wishes of the city except in the matter of designating, with him, the streets or highways to be constructed and type of pavement to be used?

It is the contention of the surveyor that after the designation of the work to be performed and the type thereof has been jointly decided by himself and the council, he thenceforth has absolute power and authority to execute the work and to cause payment therefor to be made. It is the contention of the city that the power of the county surveyor is limited to the joint decision as to the work to be done and the type thereof, and that thereafter he has a right to supervise such work but not the right absolutely to control in the premises.

There is little contention about subdivision (a) of the section. All agree that 50 per cent. of the fees collected by the county treasurer shall be passed into the fund known as the "city road fund," and that all moneys accumulated therein are to be ultimately used in the city for the construction of permanent streets.

The contention arises over subdivision (b) of the section. The first sentence of this subdivision is to the effect that such fees shall be used by the city council. The surveyor contends that this language does not actually mean that the city council shall control such expenditures, but that it is modified by the succeeding provision that all work must be done under the supervision of the county surveyor. It is then obvious that, if the contention of the county surveyor is to be upheld, instead of his acting in a supervisory capacity he will be allowed to ignore the city council and proceed according to his best judgment without interference in any manner by the city or its authorized officials. It seems to us that the confusion has arisen by reason of the fact that the statute does not specifically provide either for the transfer of the city's share of the money from the county treasurer to the city treasury, or for the expenditure thereof by any official of the county.

This problem must be approached in the light of the fact that the work to be done is upon the streets of the city, and

232

that such streets are within the exclusive jurisdiction of the city through its city council. (Sec. 5039.5, Rev. Codes; sec. 5219, Id.; sec. 5222, Id.; *Snook* v. *City of Anaconda,* 26 Mont. 128, 66 Pac. 756; *Ford* v. *City of Great Falls,* 46 Mont. 292, 127 Pac. 1004, and cases therein collected and cited.) It seems to us to be fundamental that, if the money collected by the county treasurer for the benefit of the city and to be expended in accordance with the statute is city money, then it must be disbursed by the duly constituted authorities of the city in the manner provided by law. The question then arises as to whether the money so collected does in fact constitute city funds for a specified purpose. It is true that there is no provision for transferring the money from the county treasury to the city treasury, but that condition exists with relation to taxes collected by a county treasurer for the benefit of a city or town under the provisions of section 5214, Revised Codes. Upon a previous occasion this court was confronted by the fact that the last-mentioned section failed to cover the point just mentioned. In the case of *State ex rel. City of Cut Bank* v. *McNamer,* 62 Mont. 490, 205 Pac. 951, 953, mention was made of such omission. It was there said: ''While the statute [5214, Rev. Codes] makes provision for the collection of city taxes by the county treasurer, where the city has not provided by ordinance for the collection of the same by its city treasurer, there is no specific provision as to when the money so collected shall be turned over to the city or its city treasurer. It is unfortunate that this matter should have been overlooked by the legislature, but a careful reading of all of the provisions of the statutes dealing with the subject under consideration, leads us irresistibly to the conclusion that it was the intention of the legislature to require the county treasurer to account for city taxes collected by him as heretofore indicated.'' A careful examination of the section as it exists today discloses the fact that it does not even now specifically require the transfer of city taxes collected by a county treasurer; but nevertheless this court recognized the fact that such taxes were collected for the use and benefit of the city, and that they should be delivered to the city and that within a reasonable

time, else the county will be held, as it was in the case from which the quotation is made, to have retained the funds at its peril.

While the facts in the *McNamer Case,* supra, and the present case are different, nevertheless to us it seems that the principle involved is the same. True, in the *McNamer Case,* the funds collected by the county treasurer were derived from property taxes; here they are derived from license taxes, but notwithstanding the difference, it is obvious that in both instances the collections are made by the county treasurer for the benefit of the city. Certainly, the requirements of the statute that the funds be utilized in a certain way, for the construction of permanent streets, and under the supervision of the county surveyor, must be observed. We do not hesitate to say, however, that it is beyond the realm of reasonable construction to interpret the provisions of the statute (section 1760, supra) to mean that because the county surveyor is given authority to supervise in the manner provided by statute, he should supersede the city officials in the exercise of their statutory powers and authority with relation to the construction, improvement and control of the streets and with relation to the expenditure of city funds. (Compare *McCarthy* v. *Board of Supervisors,* 15 Cal. App. 576, 115 Pac. 458; *State ex rel. Wolfe* v. *Bronson,* 115 Mo. 271, 21 S. W. 1125.)

We must therefore hold that when the requirements of the statute have been met with relation to the division of the funds and the passing of the appropriate part thereof into the fund to be known as ''city road fund,'' the money in that fund becomes in fact city funds, just as much as other taxes collected by the county treasurer for the benefit of the city.

It is true that administrative practice long established and consistently followed is impressive, but here the practice has not been very emphatically established or very long adhered to. It is likewise true that when such practice is erroneously and illegally established it is without persuasive effect. (*State ex rel. Matson* v. *O'Hern,* 104 Mont. 126, 65 Pac. (2d) 619, and cases therein cited.)

We are not impressed by the claim that federal funds will be lost to the city unless the county surveyor is given absolute authority. It seems to us that the requirement that the county surveyor shall have a voice equal to the city officials in the determination of the work to be done and the character thereof, and in the supervision of the work, was a requirement for standardization and very proper and necessary. We do not consider that absolute control of the work and the expenditures by the county surveyor is necessary in order to achieve such principle of standardization.

Let the writ of injunction issue.

Rehearing denied July 17, 1937.