[Civ. No. 2835.    Third Appellate District.—January 27, 1925.]

ERLE L. COPE, Appellant, v. H. C. FLANNERY, as Auditor, etc., Respondent.

[1] COUNTIES—EMPLOYMENT OF CONSTRUCTION ENGINEER—COMPENSATION—CONSTRUCTION OF CONTRACT.—Where a contract for the employment by a county board of supervisors of a construction engineer to prepare plans and specifications for the construction of a certain bridge provides that his compensation shall be a specified percentage of the cost thereof, payable as follows, to wit: a specified sum on a designated date "or on such earlier date that plans and specifications may be adopted by said supervisors," and the balance at certain specified times thereafter, a reasonable construction of such contract is that, where said construction engineer has performed his part of the contract up to such designated date, said first specified payment is due him on that date, although the plans and specifications prepared by him have not been adopted by the board of supervisors.

[2] ID.—PERFORMANCE OF WORK—DETERMINATION OF BOARD OF SUPERVISORS—FRAUD.—Whether said construction engineer has done his work as contemplated by said contract is a matter exclusively for the board of supervisors to ascertain and determine, and, in the absence of any allegation of fraud, when action has been taken thereon by the board of supervisors, and the claim is allowed, the question as to the performance of the services is no longer an open one.

[3] ID.—ABANDONMENT OF WORK — RIGHT TO COMPENSATION — QUANTUM MERUIT.—Under the terms of such a contract, if the board of supervisors finally concluded to abandon the construction of the proposed bridge, the county, nevertheless, is liable upon an action in *quantum meruit* for the services performed by said construction engineer, if such contract is one which the board of supervisors has the authority to execute.

[4] ID.—CONTINGENT RIGHT TO PAYMENT—CONSTRUCTION OF CONTRACT—ALLOWANCE OF CLAIM — DONATION. — That the board of supervisors might have made the first payment to said construction engineer contingent in any event upon the adoption of the plans and specifications prepared and presented by him, or that that course would have been a better business one, does not necessitate the conclusion that the board of supervisors did do so; and, upon the consideration of said construction engineer's claim for the first payment specified in the contract, the board of supervisors has jurisdiction to take into consideration the fact of the reasonable value of the engineering services in preparing the plans, specifications, and drawings for the contemplated bridge,

and it cannot reasonably be argued that the board, in allowing the claim, is making a donation.

[5] ID.—EMPLOYMENT OF CONSTRUCTION ENGINEER—ABANDONMENT OF WORK—RIGHT TO COMPENSATION—MANDAMUS.—The county board of supervisors has power to employ a person, other than the county surveyor, to prepare plans, specifications, drawings, etc., for the construction of a contemplated bridge, and also to provide for the erection thereof, under the superintendence of the construction engineer so employed; and in a *mandamus* proceeding by a construction engineer so employed to compel the county auditor to issue a warrant upon the treasurer, based upon a claim previously allowed by the board of supervisors for services so performed by him, the fact that the board of supervisors, after entering upon the work and after the advertising for bids, might have concluded to discontinue further proceedings, is not a determinate factor in the case, where the contract of employment does not so provide.

(1) 15 C. J., p. 556, n. 11.    (2) 15 C. J., p. 557, n. 34.    (3) 15 C. J., p. 559, n. 77.    (4) 15 C. J., p. 557, n. 35.    (5) 15 C. J., p. 486, n. 90; 38 C. J., p. 767, n. 26.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Hadsell, Sweet & Ingalls for Appellant.

Lawrence Schillig and W. H. Carlin for Respondent.

PLUMMER, J.—By this action the petitioner sought a writ of mandate against the defendant, as auditor of the county of Sutter, commanding and directing the defendant to issue a warrant upon the treasurer of said county in favor of the petitioner, based upon a claim previously allowed by the board of supervisors of said county.

It appears from the transcript that the petitioner, a construction engineer, and the board of supervisors of the county of Sutter, on or about the fifth day of December, 1922, entered into a certain written contract for the preparation and submission by the petitioner to said board of supervisors of plans and specifications for the construction of a certain bridge mentioned in said contract, and further providing that the plaintiff should superintend the con-

struction thereof. This contract is in the following words and figures:

"This agreement, made and entered into this 5th day of December, 1922, by and between Erle L. Cope, of Berkeley, California, and A. E. Schellenger, acting for and on behalf of the County of Sutter and in the capacity of Chairman of the Board of Supervisors of Sutter County,

"Witnesseth:

"That whereas it is necessary to extend the Nicolaus bridge from the present truss spans westerly to the river levee; and

"Whereas, at a regular meeting of the board of supervisors of the County of Sutter held on the 15th day of November, 1922, said Board of Supervisors decided to build this extension of reinforced concrete and instructed Erle L. Cope to prepare plans and specifications for and to have borings made for said bridge; and

"Whereas, at a regular meeting of the said Board held on the 5th day of December, 1922, the Chairman of the Board was authorized to enter into a contract with Erle L. Cope, Civil Engineer, to draw plans and specifications and to superintend the construction of said bridge;

"Now, Therefore, said Erle L. Cope hereby agrees to and with said County of Sutter to draw all plans and specifications and superintend the construction of a reinforced concrete bridge from the end of the present truss spans of the Nicolaus Bridge westerly to the river levee, said bridge to be complete in all respects, including approaches, and to be in accordance with the requirements of the State Reclamation Board. Said plans and specifications to include copies not exceeding fifteen (15) in all and to be complete with drawings and working plans in all respects for receiving bids for such construction.

"It is understood that by superintendence is meant that said Erle L. Cope shall make a visit to said bridge during the building thereof as often as required, and that he will at all times give his advice to said Board concerning the construction of said bridge.

"And it is further understood that the inspectors on construction shall be selected by and work under the direction of said Erle L. Cope, and shall be paid by the County of Sutter.

"It is further agreed that if said Board chooses to make alterations or extensions in connection with said bridge that said Erle L. Cope will provide plans and specifications for such work and shall superintend the same.

"And said County of Sutter, acting by and through the Chairman of said Board, hereby agrees that if said Erle L. Cope shall fulfill all the terms and agreements of his employment herein contained, then it will pay said Erle L. Cope six (6) per cent of the cost, said cost is understood to be the lower of engineer's estimate or accepted bids of said bridge with approaches as follows, to-wit:

"Two Thousand (2,000) dollars on February 6, 1923, or on such earlier date that plans and specifications may be adopted by said Board of Supervisors;

"Two Thousand (2,000) dollars on June 4, 1923;

"And the balance thereof monthly when payment is made for labor or materials, in the proportion that said payments bear to the total cost of the work.

"In witness whereof, said parties have hereunto set their hands this 5th day of December, 1922.

"ERLE L. COPE.

"A. E. SCHELLENGER,

"As Chairman of the Board of Supervisors of the County of Sutter."

After the execution of this agreement it appears that the petitioner prepared plans and specifications for the construction of a reinforced concrete bridge according to the terms of said agreement, and, also, filed with said board of supervisors supplementary plans and specifications. These plans and specifications have not been rejected, nor does it appear from the transcript that said plans were, prior to the beginning of this action, finally approved or adopted by the board of supervisors. After the preparation and presentation of the plans and specifications contemplated in said written agreement, and the presentation of the same to the board of supervisors of said county, the petitioner, on or about the sixth day of February, 1923, presented, and the board of supervisors of said county allowed, the petitioner's claim for the sum of two thousand dollars for and on account of the first payment for the work performed and to be performed by the petitioner

under the written agreement hereinbefore set forth. Upon presentation of said claim, so allowed by the board of supervisors, to the defendant, as auditor of said county, the defendant refused to draw his warrant upon the treasurer of said county for the payment thereof. Upon the trial of this action in the court below, the defendant had judgment and the petitioner appeals.

The findings of the court show that at the time of the approval of said claim by the board of supervisors, and at the time of the beginning of this proceeding, there were sufficient funds in the county treasury of the county of Sutter, to the credit of the said board of supervisors, and available and applicable to said payment, if the same constituted a legal and proper charge against the county, that the board of supervisors of said county by the execution of said contract had not incurred any indebtedness or liability exceeding for the fiscal year of July 1, 1922, to July 1, 1923, the income and revenues provided for such year. The court also found that during said period of time there was a duly elected, qualified, and acting county surveyor of the county of Sutter. After making the findings to which we have referred, the court drew its conclusions of law that the petitioner take nothing by reason of this action. The validity or invalidity of the agreement is not referred to in the conclusions of law and the conclusions of the court in relation thereto can only be inferred from the fact that the defendant was awarded judgment.

Though not set forth in the findings and conclusions of the trial court, it would appear from the argument of counsel for respondent that the court arrived at its judgment upon the theory that the contract had not been performed sufficiently to entitle the petitioner to the first payment therein provided, or that the contract was invalid and gave the petitioner no rights therein as against the county of Sutter.

[1] The agreement referred to specifies the work to be done in the orderly course which would be pursued in the event of the building of the contemplated bridge. The plans and specifications are to be presented, the plans were to include certain numbers of copies, together with completed drawings and working plans, complete in all

respects for the receiving of bids for such construction. The contract does not in express terms provide for the date when such plans and drawings were to be presented to the board of supervisors, but there appears to be no question, as appears from the transcript, that the plans, drawings, specifications, etc., were presented to the board of supervisors as contemplated by said agreement prior to the sixth day of February, 1923. Upon that date the board of supervisors, having the plans and specifications before it, and being conversant with the work performed by the plaintiff, or petitioner, allowed him the amount of the first payment provided for in said agreement. It is contended in this particular that this first payment was made contingent upon the adoption of the plans and specifications by the board of supervisors, and much stress is laid upon the wording of the clause in the agreement which reads: "Two Thousand (2,000) dollars on February 6, 1923, or on such earlier date that plans and specifications may be adopted by said board of supervisors." It would seem that the construction contended for would necessitate the reading of this clause of the agreement as though it were written as follows: Two Thousand dollars on February 6, 1923, provided that the plans and specifications presented by the petitioner had been adopted, or, if such plans and specifications are adopted prior to that date, then, upon the date of such adoption. We do not very well see how the construction contended for by the respondent, that the payment provided for in the agreement to be made on February 6, 1923, is in any manner contingent upon the adoption of the plans and specifications by the board of supervisors. The more reasonable construction, and what we think was contemplated by the parties entering into the same, was and is that two thousand dollars was to be paid upon that date on account of the services performed and contracted to be performed.

[2] The claim, as presented, purports to be for engineering work on the bridge mentioned in the contract. The plans, drawings, etc., were before the board of supervisors. Whether the work had been done as contemplated, was a matter exclusively for the board of supervisors to ascertain and determine, and, in the absence of any allegation of fraud, when action has been taken thereon by the board of

supervisors, and the claim allowed, the question as to the performance of the services is no longer an open one. In *McFarland* v. *McCowen,* 98 Cal. 329 [33 Pac. 113], quoting from the syllabus, the law is thus stated: ''Where a claim for services, which, if performed, is a legal charge against a county, has been duly presented to the board of supervisors of the county, regularly considered, allowed, and ordered paid, the action of the board is, in the absence of fraud, conclusive, and the auditor cannot lawfully refuse to draw his warrant therefor upon the treasurer upon the ground that such services were never rendered, and he may be compelled by writ of mandate to draw such warrant.'' This court, in *Carmichael* v. *Riley,* 56 Cal. App. 409 [205 Pac. 478], in considering the allowance of a claim by a reclamation board, states the rule in relation to the action of such boards as follows: ''Having reached the conclusion that the district was bound by the terms of the agreement, it follows that the allowance by the board of petitioner's claim is conclusive upon the question of the district's negligence as well as of the compensation due petitioner therefor. (*Colusa County* v. *De Jarnett,* 55 Cal. 373; *McFarland* v. *McCowen,* 98 Cal. 329 [33 Pac. 113]; *McConoughey* v. *Jackson,* 101 Cal. 265 [40 Am. St. Rep. 53, 35 Pac. 863]; *McBride* v. *Newlin,* 129 Cal. 36 [61 Pac. 577]; *County of Santa Cruz* v. *McPherson,* 133 Cal. 282 [65 Pac. 574]; *County of Alameda* v. *Evers,* 136 Cal. 132 [68 Pac. 475]; *County of Yolo* v. *Joyce,* 156 Cal. 429 [105 Pac. 125]; *Victors* v. *Kelsey,* 31 Cal. App. 796 [161 Pac. 1006].)'' In the recent case of *Nightingale* v. *Williams, ante,* p. 424 [233 Pac. 807], the court said: "The determination of the council on the question of the performance of the work is a determination of an issue of fact, which, if the legal procedure has been followed, will be taken as conclusive by the courts.''

It is true that the contract contemplated considered future work after the date of February 6, 1923, such as the superintendence of the construction of the contemplated bridge according to the plans and specifications, as finally adopted by the supervisors. It would further appear that the construction contended for by the respondent would lead to the conclusion that no part of the compensation agreed to be paid the petitioner would become due or

payable to him until the contemplated bridge had been
finally finished. We do not think that the contract is
susceptible of such construction, nor do we think that the
parties thereto contemplated that no compensation was to
be made to the petitioner until the proposed structure had
been finally completed. There does not appear to be any-
thing in the contract making the first payment set forth
therein contingent upon the final erection of the bridge.
[3] We think, under the terms of the contract, if the
board of supervisors finally concluded to abandon the con-
struction of the proposed bridge, the county, nevertheless,
would be liable upon an action in *quantum meruit* for the
services performed by the petitioner, if the contract is
one which the supervisors had authority to execute.
[4] That the board of supervisors might have made the
first payment contingent in any event upon the adoption of
the plans and specifications presented by the petitioner does
not necessitate the conclusion that the board of supervisors
has done so, because that course would have been a better
business one. The board has found that the engineer has
performed certain services, that those services are worth
the sum of two thousand dollars. No question of good
faith on the part of the board of supervisors is presented
to us for consideration. We think, under the contract, the
board had a legal right to consider the petitioner's claim
and make the findings at which it arrived. Having done
so, we are bound by that conclusion. We may further add
that the findings of the court show the action of the board
of supervisors was not a payment for unperformed services,
or for services that might never be performed. We think
the board had jurisdiction to take into consideration the
fact of the reasonable value of engineering services in pre-
paring plans, specifications, and drawings for the contem-
plated bridge, and it cannot be reasonably argued that the
board, in allowing the claim, was making a donation. The
board in the allowance of the claim also was in a position
to take into consideration the prospective cost of the struc-
ture to be erected, and to determine whether the payments
provided for under the contract on certain dates would or
would not amount to a sum in excess of six per cent of the
cost of building the proposed bridge. The length of the
structure, its width, its height, and the different elements

entering into the plans were all before the board of supervisors, and were matters for them to consider, and nothing appearing in the transcript to the contrary, it must be assumed by this court that the findings of the board of supervisors were amply supported by the facts appearing before it at the time of the allowance of the claim.

[5] The vital question in this case really is, Did the board of supervisors have power to employ anyone, other than the county surveyor, to prepare plans, specifications, drawings, etc., for the construction of the contemplated bridge, and also provide for the erection thereof, under the superintendence of the construction engineer so employed? Section 4041 of the Political Code, so far as it applies to this case, and as governing the powers of the board of supervisors, reads as follows:

"The Board of Supervisors, in their respective counties shall have jurisdiction and power, under such limitations and restrictions as are prescribed by law:

"5. To lay out, maintain, control, construct, repair and manage . . . bridges within the county, unless otherwise provided by law, and to grant franchises and licenses to collect tolls thereon.

"7. Whenever the cost of construction of any bridge . . . shall exceed the sum of $500 such work shall be done by contract, and any contract therefor shall be void unless the same shall be let as hereinafter provided. The Board of Supervisors shall adopt plans and specifications, strain sheets and working details therefor, and must advertise for bids for the performance of said work in a newspaper of general circulation published in the county for at least twenty days . . . and said board shall award the contract to the lowest responsible bidder . . . provided that for the construction of any bridge . . . if the board of supervisors shall be advised by the county surveyor or engineer that the work can be done for a sum less than the lowest responsible bid, it shall then be their privilege to reject all bids and to order the work done or structure built by day's work under the supervision and direction of said surveyor or engineer. . . .

"41. To do and perform all other acts and things required by law not in this title enumerated or which may

be necessary to the full discharge of the duties of the legislative authority of the county government.''

The argument in this case circles around the proviso clause which authorizes the board, in the event that it shall be advised by the county surveyor that the work can be done for less than the lowest responsible bid, it shall then be the privilege of the board to reject all bids and to order the work done by day's labor under the direction of the county surveyor or engineer. The word ''engineer'' appears in the section, as amended by the legislature providing for the appointment of county engineers instead of election of surveyors, but that amendment has been held inoperative in the case of *Coulter* v. *Pool*, 187 Cal. 181 [201 Pac. 120]. The section must be read as though only the word ''surveyor'' occurred therein. It will be noted that the legislature has used the word ''privilege,'' which imports the idea that the board of supervisors, under the contingencies provided for, may exercise the right of having the bridge constructed by day labor and not under contract. The term ''privilege'' is defined by the Standard Dictionary as ''a peculiar benefit, favor or advantage.'' ''A right . . . not enjoyed by all, a special right or power conferred or possessed by one or more individuals.'' (3 Words and Phrases, 2d Ser. 1206.) A number of other definitions of this word is there given, none of which hold the work to be mandatory in its signification. We think the language used imports a discretionary power and vests in the board of supervisors authority, either to proceed by contract or to have the work done by the employment of day laborers, as to the board may seem most advantageous. A somewhat analogous question was considered by the supreme court of this state in *Woolwine* v. *Superior Court*, 182 Cal. 388 [188 Pac. 569], the question being as to the authority of the board of supervisors to employ someone other than the district attorney to manage certain litigation. In deciding the question, the court said: ''Section 4041 of the Political Code, relating to the powers of supervisors, declares that they shall have jurisdiction and power, under such limitations and restrictions as are prescribed by law, 'to direct and control the prosecution and defense of all suits to which the county is a party, and, by two-thirds vote of all members, may employ counsel to assist the dis-

trict attorney in conducting the same.' (Subd. 16.) Under
this provision it has become the settled law of the state
that the Board of Supervisors has power to employ an
attorney, other than the district attorney, to prosecute or
defend an action to which the county is a party. . . .
'Whether, in any particular case, such employment shall
be made is addressed to the discretion which they are to
exercise in behalf of the public interests. If, in their
opinion, the interests of the county require such employment
it is their duty to secure the services of a competent
attorney therefor.' '' In support of this rule, a number of
authorities are cited. In *Nickerson* v. *San Bernardino,* 179
Cal. 518 [177 Pac. 465], the court, in considering the
powers of the board of supervisors and the lack of authority
on the part of the courts to control their actions in certain
cases, thus states the law: ''When the legislature has com-
mitted to a municipal body the power to legislate on given
subjects or has committed to it judgment or discretion as
to matters upon which it is authorized to act, courts of
equity have no power to interfere with such a body in the
exercise of its legislative or discretionary functions.'' The
question under consideration in the Nickerson case, *supra,*
was that of purchasing land for a hospital site, and it was
urged upon the court that the board of supervisors had
acted illegally in buying too large a tract, and in answer to
this the court further said: ''All these matters were com-
mitted by the statute solely to the board, and their deter-
mination involved both legislative action and the exercise
of discretion, neither of which was subject to review or
control of any court. Whether, in the exercise of legisla-
tive powers, a board acts wisely or unwisely is no concern
of the courts. They cannot enter the board room and sub-
stitute their judgment for that of the board nor interfere
at all with its action unless the board is exceeding its
legislative powers, or its judgment or discretion is being
fraudulently or corruptly exercised.''

The various sections found in article I, chapter 8,
title 2, part 4, of the Political Code, under the title of
Department of Public Works, show clearly that the legis-
lature did not contemplate that a county surveyor would
in every case, or even in any case, be a competent con-
struction engineer. The language of the legislature must

be construed in the light of that which is common knowledge to everyone, i. e., there is a vast difference between surveying land, making plats and running lines, marking boundaries, and the building of bridges, such as now are and were being erected when the provisions of the code under consideration were adopted. Entirely different are the qualifications required for an ordinary surveyor, as contemplated by section 4214 of the Political Code, and a construction engineer competent to erect large structures, or bridges, where tensile strength, resistance to climatic conditions, the consideration of all the various qualities of materials entering into the structure must be known in advance and the weight or load capable of being carried thereby accurately determined in order to safeguard the interests of all who may use the same. These very facts necessitate the vesting in the board of supervisors the discretionary power included in the word "privilege."

Section 4214 of the Political Code, to which we have adverted, specifies that the surveyor must be a licensed land surveyor of the state and must make any survey that may be required by order of court, or of the board of supervisors, etc. There is nothing in the section which contemplates the possession of any of the qualifications necessary to perform the services contemplated by the agreement entered into between the plaintiff and the board of supervisors of the county of Sutter. The making of field-notes and plats of surveys, and the filing of them in certain offices, where they may be preserved for the benefit of the public, carries with it nothing that imports the possession of technical skill requisite to perform the services required of a construction engineer. Nor, do we think, that section 4219 of the Political Code trenches at all upon the powers of the board of supervisors. That section has to do with the duty of surveyors as they may be imposed by the board of supervisors. The section reads: "The surveyor shall make such surveys of county roads and perform such other engineering work as the board of supervisors may direct. . . . All such maps and field-notes of surveys shall be filed in the office of the surveyor and the same shall thereafter be and remain the property of the county. It shall be the duty of the surveyor to advise the board of supervisors regarding all engineering work and to perform

such engineering work as may be required by the board of supervisors.'' The subject there dealt with is that of county roads, with which there is connected some engineering work, such as the filling up of depressions, leveling down hills, etc. That the whole section has in view the making of field-notes and matters of that kind is clearly shown by the second sentence, which, as we have seen, refers to maps, field-notes of surveys, etc., being filed. There is not one word about building plans, the erection of structures of any kind, or the determining of any of the factors entering therein by the surveyor. That the surveyor may be consulted, does not necessitate that his advice be followed. It is simply a matter of legislative discretion with the supervisors.

The respondent calls our attention to the case of *McCarthy v. Board of Supervisors,* 15 Cal. App. 576 [115 Pac. 458], where the power of the board of supervisors to follow the advice of the county surveyor and have a bridge built by day's work was considered. As we read that case, instead of sustaining the contentions of the respondent, it simply exemplifies what we have herein been setting forth that the board of supervisors, under the provisions of section 4041 of the Political Code, may have certain work in relation to bridges, wharves, chutes, and shipping facilities done by day work, under the supervision of the county surveyor, instead of by contract. It may further be noted that the board is given absolute power in the employment of persons qualified to prepare plans, specifications, strainsheets, and working details, and when the work is done by contract, to entirely dispense with the services of the county surveyor. This to us necessarily implies the power of the board to employ someone competent to determine whether the structure contracted to be erected is being built according to the plans and the materials used therein, of the kind and quality, tensile strength, etc., called for by the specifications.

While the briefs show, the transcript does not set forth, the magnitude of the work to be undertaken by the board of supervisors in the instant case, but it is readily conceivable that the extent and character of the work about to be undertaken is of such importance that the board of supervisors, in the exercise of a wise discretion, might determine

to exercise their privilege in the first instance, as to the employment of someone competent to superintend the work from the initial step to its final completion and also to determine that no one would be better qualified to perform such duties than the engineer, who has drawn the plans, strain-sheets, working details and had calculated the tensile strength of the materials required, what their composition should be, and the various qualities of all the building material that should enter into the structure.

The fact that the board of supervisors might, after entering upon the work and the advertising for bids, have concluded to discontinue further proceedings, is not, we think, a determinative factor in this case. The board of supervisors of Sutter County, as we have shown, had the right to employ the plaintiff to perform certain labors for the benefit of the county, and the board of supervisors has determined that services of the value of two thousand dollars have been performed by the plaintiff for the county of Sutter. This finding is conclusive. In view of what has been said, we think the following premises laid down by the appellant sound: The contract is valid as within the authority of the board of supervisors; under the contract two thousand dollars was payable on February 6, 1923; the supervisors, in approving the claim, took all proceedings required by law; their approval of the claim was conclusive on the courts that petitioner had performed sufficiently to entitle him to this payment; petitioner, in presenting plans and specifications had done all that he was required to do by February 6, 1923; that there is neither allegation nor element of fraud entering into this proceeding.

The judgment of the trial court is reversed, and it is further ordered that the trial court enter judgment in favor of the plaintiff and issue its mandate requiring and commanding the defendant, as county auditor of the county of Sutter, to draw his warrant in favor of the plaintiff in the sum of two thousand dollars.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 26, 1925.

All the Justices concurred.