[Sac. No. 3963. In Bank.—February 9, 1929.]

ERLE L. COPE, Appellant, v. COUNTY OF SUTTER, Respondent.

Joe G. Sweet and Hadsell, Sweet & Ingalls for Appellant.

Arthur Coats, Lawrence Schillig and W. H. Carlin for Respondent.

CURTIS, J.—This action, originally appealed to this court, was subsequently transferred to the district court of appeal in and for the third appellate district. That court rendered an opinion reversing the judgment, and a petition was filed in this court asking for a hearing herein, which petition was granted. At the time of the consideration of said petition by this court we were in doubt as to the effect of section 4041 of the Political Code upon the right of the board of

supervisors to rescind a contract entered into by said board with the plaintiff and hereinafter set out. The order for a transfer was made largely for the purpose of giving opportunity for further consideration of the effect of said section 4041 upon the rights of the parties under said contract.

By this contract of December 5, 1922, the plaintiff was employed by the board of supervisors of the defendant to prepare plans and specifications for the extension of the Nicolaus bridge situate in said county. After two sets of plans had been prepared by him and submitted to the board of supervisors, the board, without rejecting either of said sets of plans, passed a resolution, directing the county surveyor of said county to prepare plans for said bridge, and upon plans, so prepared by the county surveyor, the board of supervisors after advertising for bids, let the contract for the construction of said bridge, and under this contract the bridge was constructed according to the plans prepared by said county surveyor.

Section 4041 of the Political Code provides that after the board of supervisors has adopted plans for the construction of a bridge, or other improvements therein mentioned, and has advertised for bids, as required by said section, ''if the board of supervisors shall be advised by the county surveyor or engineer that the work can be done for a sum less than the lowest responsible bid, it shall then be their privilege to reject all bids and to order the work done or structure built by day's work, under the supervision and direction of the said surveyor or engineer.'' It is apparent that the provisions of this section of the code have no bearing upon the rights of any of the parties to the present action. The board of supervisors made no attempt to proceed under the terms of the section just quoted. Had it done so, a different question might be presented for our determination. The facts before the court, as will more clearly appear from their discussion hereinafter, show that the members of the board after entering into the contract with plaintiff, and after plaintiff in accordance with said contract had prepared two sets of plans for the construction of said bridge, changed their minds and determined to have the county surveyor instead of the plaintiff prepare said plans. There is nothing to be found in the provisions of said section 4041 of the

Political Code that would in any way justify this course of action on the part of the board of supervisors.

The board was given "the privilege" of constructing the bridge under the direction of the county surveyor and by day's labor only after bids had been received, and the county surveyor had advised the board that the improvement could be constructed for a sum less than the lowest bid. The evidence shows that the proceedings for the construction of said bridge had never reached that stage after which the board would have been authorized to act under the privilege provided for by said section, and, furthermore, that the board never attempted to act under the authorization of said privilege. Therefore, the provisions of said section 4041 cannot in any way afford defendant any defense to said action.

All other questions presented on this appeal are sufficiently dealt with and satisfactorily determined in the opinion of the district court of appeal written by Justice *pro tem.* Preston, while acting as a member of said court. This opinion we adopt as the opinion of this court, and it is as follows:

"This is in appeal by plaintiff Erle L. Cope, from a judgment in favor of defendant County of Sutter in an action brought by plaintiff to recover damages for breach of contract.

"The plaintiff and appellant is a civil engineer. On December 5, 1922, he was employed by the board of supervisors of Sutter county to prepare plans and specifications for, and to superintend the construction of, a bridge to be built by the county and known as 'Nicolaus Causeway.' The contract of employment was in writing and is as follows:

" 'This Agreement made and entered into this 5th day of December, 1922, by and between Erle L. Cope, of Berkeley, California, and A. E. Schellenger acting for and on behalf of the County of Sutter and in the capacity of Chairman of the Board of Supervisors of Sutter County.

" 'Witnesseth:

" 'That Whereas it is necessary to extend the Nicolaus Bridge from the present truss spans westerly to the river levee, and

" 'Whereas at a regular meeting of the Board of Supervisors of the County of Sutter held on the 15th day of

November, 1922, said Board of Supervisors decided to build this extension of reinforced concrete and instructed Erle L. Cope to prepare plans and specifications for and to have borings made for said bridge, and

" 'Whereas at a regular meeting of said Board held on the 5th day of December, 1922, the Chairman of the Board was authorized to enter into a contract with Erle L. Cope, Civil Engineer, to draw plans and specifications and to superintend the construction of said bridge;

" 'Now Therefore, said Erle L. Cope hereby agrees to and with said County of Sutter to draw all plans and specifications and superintend the construction of a reinforced concrete bridge from the end of the present truss spans of the Nicolaus Bridge westerly to the river levee, said bridge to be complete in all respects, including approaches, and to be in accordance with the requirements of the State Reclamation Board. Said plans and specifications to include copies not exceeding fifteen (15) in all and to be complete with drawings and working plans in all respects for receiving bids for such construction.

" 'It is understood that by superintendence is meant that said Erle L. Cope shall make a visit to said bridge during the building thereof as often as required, and that he will at all times give his advice to said Board concerning the construction of said bridge.

" 'And it is further understood that the inspectors on construction shall be selected by and work under the direction of said Erle L. Cope, and shall be paid by the County of Sutter.

" 'It is further agreed that if said Board chooses to make alterations or extensions in connection with said bridge that said Erle L. Cope will provide plans and specifications for such work and shall superintend the same.

" 'And said County of Sutter, acting by and through the Chairman of said Board, hereby agrees that if said Erle L. Cope shall fulfill all the terms and agreements of his employment herein contained, then it will pay said Erle L. Cope six (6) per cent of the cost, said cost is understood to be the lower of engineer's estimate or accepted bids of said bridge with approaches as follows, to-wit:

" 'Two Thousand ($2,000) dollars on February 6, 1923, or on such earlier date that plans and specifications may be adopted by said Board of Supervisors;

" 'Two Thousand ($2,000) dollars on June 4, 1923;

" 'And the balance thereof monthly when payment is made for labor or materials, in the proportion that said payment bears to the total cost of the work.

" 'In Witness Whereof, said parties have hereunto set their hands this 5th day of December, 1922.

" 'Erle L. Cope,

" 'A. E. Schellenger,

" 'As Chairman of the Board of Supervisors of the County of Sutter.'

"In accordance with the terms of this agreement, the appellant prepared plans and specifications and estimates of cost for the construction of this proposed bridge and also, at the request of said board of supervisors, prepared amended or supplemental plans and specifications, etc. The original plans and specifications, and estimates of costs, were filed with the said board of supervisors on February 6, 1923. The amended plans, specifications and estimates were prepared by the appellant and filed with said board on March 5, 1923. None of these plans and specifications, etc., have ever been rejected, nor does it appear from the record that any of them were actually approved or adopted by said board of supervisors. The testimony shows that the two sets of plans and specifications were merely 'ordered filed and taken under advisement by the board.'

"After appellant filed the original plans and specifications on February 6, 1923, he presented his claim to said board for $2,000, it being the first payment called for under the contract. The board passed the claim and ordered it paid, but the auditor refused to draw his warrant upon the treasurer therefor, and appellant instituted *mandamus* proceedings against the auditor, in which proceedings appellant finally prevailed and received from the county this payment of $2,000. (*Cope* v. *Flannery*, 70 Cal. App. 738 [234 Pac. 845].)

"After the decision in *Cope* v. *Flannery*, the second payment of $2,000, called for in the contract, was allowed by the board of supervisors and paid by the auditor without

litigation. Therefore, up to date, appellant has received $4,000 on account of said contract.

"After filing the amended plans and specifications in March, 1923, appellant attended many meetings of the board of supervisors and insisted that he be allowed to proceed with his contract. He also wrote many letters to the board, requesting that he be allowed to proceed with the contract and superintend the construction of the bridge. The board of supervisors, however, entirely ignored appellant and his plans and specifications and said contract, and on January 7, 1924, passed the following resolution: 'On motion, it was ordered that William Shearer, the County Surveyor, be and he is hereby instructed and directed to prepare plans for a grade and bridge across Barrow Pit, at the approach of Nicolaus Bridge.' (Thereafter, plans and specifications were prepared by Mr. Shearer, the county surveyor, adopted by the board and the bridge was constructed according to such plans and specifications at a cost of $169,850. The bridge was constructed at the same general location as contemplated in appellant's plans and specifications, but entirely according to the plans and specifications and under the supervision of the county surveyor.

"After the board of supervisors had placed the superintending of the construction of the bridge entirely in the charge of Mr. Shearer, the county surveyor, appellant still insisted that he be allowed to carry out his contract and superintend the construction of the bridge, so on March 16, 1925, said board of supervisors passed the following resolution: 'On motion, it was ordered that Mr. Erle L. Cope be notified that Mr. William Shearer, county surveyor, will continue as representative and engineer of the county, on the construction of the "Nicolaus Causeway," and that the contractor on said construction is not authorized to recognize any other person as such engineer and representative of the county. The foregoing order passed and adopted by unanimous vote of all members of said board.'

"This resolution was served upon appellant and he was ordered off of the job. Appellant made no further attempt to superintend the work or attend any further meetings of the board of supervisors or have anything further to do with the construction of said bridge, but on the first day of

June, 1925, presented his claim, which is the basis of this action, to the board of supervisors for $5,610, claiming that this amount is due him under the contract, calculated as follows:

Total fees, 6% of $166,000...............$9,960.00
Less payments ........................ 4,000.00

$5,960.00
Less expenses to fulfill .................$ 350.00

Balance being damages sustained.........$5,610.00

"This claim was rejected by the board of supervisors and this action followed. The case was tried by the court sitting without a jury, and the court made findings and rendered judgment in favor of the defendant.

"The execution of the contract is admitted.

"Appellant strenuously insists that the material findings of the court are not supported by the evidence. The court, among other things, found that the plans and specifications for the bridge were prepared by Cope, Rand, Means Co., a corporation, under the supervision of the appellant and not by the appellant, and for this reason appellant had violated the contract. The only testimony upon this question was that given by the appellant, which is as follows:. 'By the Court: Under whose direction were they drawn (plans and specifications)? A. My direction and a good part of it was drawn by me personally. Mr. Sweet: And are these the amended plans that you allege in your complaint you filed with the board of supervisors? A. Yes, sir.' It is true that the name of Cope, Rand, Means Co. appears on the plans, but that is no proof that the plans were not prepared by, or under the direct supervision of appellant, as he testified, and there is no testimony in the record that Cope, Rand, Means Co. had anything to do with the original plans and specifications or the amended plans and specifications. Furthermore, these plans were before the board of supervisors when they ordered the two $2,000 payments made to appellant, and no objection what-ever was then raised by the board that the plans and specifications were not prepared by appellant.

"The court also found 'that said plans and specifications were incomplete and objectionable to said board of super-

visors and not satisfactory or acceptable to them and were in violation of the terms of said contract.'' These plans and specifications were filed and the board of supervisors made no formal order either approving or rejecting the same, but ordered appellant's claim for $2,000 paid. The board requested amended plans and specifications, which were furnished, and then the board ordered that appellant's second claim for $2,000 be paid. No other conclusion can be drawn from this action of the board than that the plans and specifications furnished by appellant were satisfactory to and approved by them. It would be unreasonable to assume that the board of supervisors would pay $4,000 of the county's money after receipt of the plans and specifications, and amended plans and specifications, if the same were not satisfactory or were in violation of the contract. In view of this affirmative action by said board, certainly it could not be successfully contended that they rejected the plans or that such plans and specifications were unsatisfactory to them, simply because no formal order of approval was entered on their minutes. The fact that the board called for amended plans is no evidence of dissatisfaction. The contract, on this point, provides: 'It is further agreed that if said board chooses to make alterations or extensions in connection with said bridge, the said Erle L. Cope will provide plans and specifications for such work and shall superintend the same.' This simply indicates that the board reserved the right in the contract to have several sets of plans and specifications for the proposed bridge prepared, if necessary, in order to meet any changes or alterations that might be made in the construction of the bridge, which is a very common occurrence in the building of a bridge such as contemplated by said board. Therefore, we are unable to find any evidence in the record that would support the finding that the plans and specifications furnished by appellant were incomplete or not acceptable to the said board of supervisors

"Other findings made by the trial court are also unsupported by the evidence. None of the supervisors testified in this case, and respondent has not pointed out any evidence that would in the slightest degree support the findings, and from a careful search of the entire record we are unable to discover any, but, on the contrary, find that all the evidence

454

supports the contention of appellant, except on the question of damages, which we will refer to later.

"Respondent contends that the board of supervisors had the right to terminate the contract at any time because there was no provision in the contract that the owner may not discontinue the work or discharge the engineer. There is no merit in this contention. There is no provision in the contract which permits the owner to discontinue the work or discharge the engineer, and, in the absence of such provision in the contract, it could certainly not be terminated and the engineer discharged without cause. Furthermore, the board of supervisors did not abandon the project; on the contrary, they built the bridge upon plans later prepared by the county surveyor. Neither did the board of supervisors declare the work of appellant insufficient or that the appellant himself was incompetent. They simply ignored the appellant altogether, as though he had no contract whatever with them and proceeded without regard to their responsibility under the contract.

"Respondent also contends that as a contract was made in December, between the time a new board was elected in November, and the time such new board took office in January, 1923, that such contract is against public policy, because the outgoing board has contracted in advance what the new board shall do, and the new board thereby deprived of their legislative function, discretion and power to act for the best interests of the county, in case the new board deems the bids too high or the plans unsatisfactory. There is no merit in this contention. In contemplation of law it is wholly immaterial that the new board of supervisors had nothing to do with entering into the contract with appellant. In legal contemplation, the new board of supervisors is the same board that entered into the contract. (*California Highway Com.* v. *Riley,* 192 Cal. 97 [218 Pac. 579]; see, also, *Cope* v. *Flannery, supra.*)

"The respondent contends, and the trial court found, that the contract was void because the appellant was not a licensed architect at the time he prepared the plans and specifications for said bridge. Respondent has cited no authority and made no argument in support of this finding. Section 4041 of the Political Code, which deals with the power of boards of supervisors to build bridges, etc., con-

tains no provision that the board of supervisors, in securing plans and specifications and estimates for any proposed bridge, *shall only employ licensed architects.* Supervisors are given general authority, and may employ anyone who, in their judgment, is competent to do the work. (*Cope v. Flannery, supra.*)

■ "Appellant contends that the proper measure of damages is the full contract price, less the cost of performance, and offered evidence at the trial in support of this theory. His evidence tended to show that he had been damaged in the sum of $5,960. The county surveyor testified that even under appellant's theory of damages, appellant would only be entitled to approximately $3,000.

"No other testimony was offered on the question of damages; still, the trial court found that appellant had not been damaged in any sum whatever.

"We are of the opinion that when appellant has proven the contract; the performance thereof on his part by preparing and filing with the board of supervisors the plans and specifications; his offer to superintend the construction of the bridge; and respondent's refusal to proceed with the contract; then he has established at least a *prima facie* case, entitling him to recover as damages the full contract price, less the cost of performance. The record reveals that all these matters were fully established by appellant. This being true, then the burden was cast upon respondent to prove facts in mitigation of those damages. (*Vitagraph, Inc.,* v. *Liberty Theatres,* 197 Cal. 694 and 699 [242 Pac. 709], and cases there cited.) The finding of the court that 'appellant has suffered no damages whatever' cannot stand, and it was incumbent upon the trial court to find the actual damages sustained by appellant from the evidence before it."

The judgment is reversed.

Richards, J., Shenk, J., Seawell, J., Preston, J., Langdon, J., and Waste, C. J., concurred.