[Civ. No. 6029. First Appellate District, Division One.—January 27, 1928.]

MARY MESMER BROEDLOW, Respondent, v. ERNEST LEGROS, Appellant.

J. Hampton Hoge for Appellant.

Clark, Nichols & Eltse and Reece Clark for Respondent.

KNIGHT, J.—While operating an automobile in the "jitney" service along Seventh Street, in Oakland, appellant collided with a pedestrian named Lydia Mesmer, inflicting upon her injuries from which she soon afterward died. As a result of the accident, the decedent's mother, being depen-

dent upon her daughter's support, commenced this action for damages, alleging that her daughter's death was proximately caused by the negligent operation of appellant's automobile, and upon trial before the court sitting without a jury was given judgment for the sum of two thousand five hundred dollars, from which judgment this appeal has been taken. The points urged for reversal are that the court erred in not granting a nonsuit and that the findings upon the contested issues of appellant's negligence and the decedent's contributory negligence are not supported by the evidence.

The accident happened on December 4, 1924, about the hour of 7:20 P. M., on Seventh Street between Myrtle and Market Streets, at a point about sixty feet east of the intersection of Seventh with Myrtle, while the decedent was attempting to cross Seventh Street. The latter street runs east and west, is about seventy-four feet in width, and crosses Myrtle Street at right angles. Along the center thereof are laid the double tracks of the Southern Pacific Company's interurban railroad, there being a space of about ten feet between the two sets of tracks, and the rails of each set being approximately four and one-half feet apart. The west-bound electric trains are operated over the northerly tracks and the east-bound trains over the southerly tracks.

At the time of the accident the weather was misty and the street was wet and slippery, it having rained earlier in the evening. Appellant was driving a seven-passenger automobile east along the south side of Seventh Street, carrying four passengers, the gross weight of the machine with the passengers being approximately three tons. Shortly prior to the accident the decedent left her apartment, located on the north side of Seventh Street within the block mentioned, where she lived with her mother, to go across the street to purchase some foodstuffs at a bakery, after which she started to recross the street, but upon observing a west-bound train approaching from her right, stopped just before attempting to cross the southerly or east-bound tracks, and it was at or near this point where she was struck by appellant's automobile, which came upon her from the left side. She was

picked up about two or three feet south of the most southerly rail and about sixty feet east of said intersection.

The evidence as to the exact movements of appellant's automobile immediately preceding the accident is somewhat conflicting, but the essential facts adduced at the trial supporting the contested findings are substantially as follows: As appellant entered the intersection of Seventh and Myrtle Streets he observed two pedestrians crossing Seventh Street in a southerly direction, and instead of passing in front of them by keeping well to the right and traveling along the south curb of Seventh Street as he could have done, he turned to the left and passed behind them, which caused him to drive his automobile over on to and along the southerly or east-bound railroad track. While following this course the west-bound train with its headlight burning approached from the opposite direction on the northerly tracks and was about to stop at the Market Street station, which was located on the north side of Seventh Street in the middle of the block between Myrtle and Market Streets. When the train drew closer to him, appellant, without giving any warning of his intention so to do, suddenly swerved to the right from the southerly tracks upon which he had been traveling, and not observing decedent until his machine was within six feet of her, nor having his machine under sufficient control to stop within that distance, struck the decedent, knocking her down and fracturing her skull.

Appellant testified at the trial to the effect that after passing the two pedestrians above mentioned and before leaving the intersection he gradually diverted his course to the right from the railroad track and regained the traveled portion of the south side of Seventh Street, and that he had proceeded straight ahead for a short distance when suddenly the decedent appeared within the glare of his headlights, not six feet away; that she was then looking in the direction of and backing away from the approaching electric train, and in doing so stepped backward into the pathway of his machine; that at no time was he traveling more than fifteen miles an hour, and that he brought his automobile to a stop within four or five feet from the point of the impact. Appellant had given his version of the accident under oath on two previous occasions, however, first before the

coroner's jury, and later in the form of a deposition, and the record shows that some of the statements there made varied with those made at the trial. But aside from the question of the conflicting statements, appellant admitted in his previous testimony that as he approached the point of the accident the headlight from the electric train more or less affected his vision, but that nevertheless he was able to see ahead for a distance of about forty feet; also that after decedent came within his view and in an effort to avoid striking her he turned quickly to the south toward the gutter, but a Ford truck was standing alongside the gutter and he was unable to divert his course farther to the south; and that the application of his brakes caused his machine to skid, the front wheels turning toward the north and the rear wheels toward the curb.

Section 113 of the state Vehicle Act requires that any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper and having due regard to the traffic, surface, and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger life, limb, or property of any person; and aside from these mandatory provisions of the statute the driver of a motor vehicle is bound to anticipate the presence on the street of other persons having equal rights there with himself (*Zarzana* v. *Neve Drug Co.,* 180 Cal. 32 [15 A. L. R. 401, 179 Pac. 203]). In this connection the case of *Rush* v. *Lagomarsino,* 196 Cal. 308 [237 Pac. 1066], declares: "The right of drivers of automobiles to use public highways is not superior to that of the humblest pedestrian and in the exercise of a common right to the use of the public highways all persons using the same must exert constant care and caution for the conservation of their correlative rights commensurate with the special hazard which is peculiar to and nowadays ever present in the use of public highways. Accordingly, the driver of an automobile 'has no right to assume that the road is clear, but under all circumstances and at all times he must be vigilant and must anticipate the presence of others. . . . The fact that he did not know that anyone was on the highway is no excuse for conduct which would have amounted to recklessness if

he had known that another vehicle or person was on the highway.' (*Meyers* v. *Bradford*, 54 Cal. App. 157, 159 [201 Pac. 471].) Even though the operator of an automobile may be rigidly within the law, 'he still remains bound to anticipate that he may meet persons at any point of the street and he must, in order to avoid the charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution and if the situation requires, he must slow up and stop.' (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 350 [208 Pac. 125].)''

In view of the numerous, peculiar circumstances attending the accident here involved, including the condition of the weather and the pavement, the location of the accident and the fact of the approaching train which was about to stop at a station within the block, the wavering course appellant was following, his failure to observe the decedent until he was within six feet of her, also his omission to give any warning of his sudden change of course just before striking the decedent, and the fact that he did not have his automobile under such control as to allow him to stop within the range of his vision, we are of the opinion that the question of whether appellant was operating his automobile in a negligent manner was one of pure fact for the trial court to determine, and it having found in the affirmative upon that issue, that the evidence hereinabove set forth is sufficient to support its finding (*Zarzana* v. *Neve Drug Co.*, *supra; Gross* v. *Burnside*, 186 Cal. 467 [199 Pac. 780]; *Burgesser* v. *Bullock's*, 190 Cal. 673 [214 Pac. 649]; *Ham* v. *County of Los Angeles*, 46 Cal. App. 148 [189 Pac. 462]; *Park* v. *Orbison*, 43 Cal. App. 74 [184 Pac. 428]; *Courviosier* v. *Burger*, 61 Cal. App. 470 [215 Pac. 93]; *Simmons* v. *Stephens*, 48 Cal. App. 351 [191 Pac. 978]).

Nor do we find sufficient legal grounds to justify an interference with the trial court's negative finding upon the question of contributory negligence. In the absence of a prohibitory state or municipal law the decedent had the right to cross Seventh Street at any point within the block (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709]; *Gett* v. *Pacific Gas & Electric Co.*, 192 Cal. 621 [221 Pac. 376]), and the presumption

is that while doing so she was at all times exercising the requisite degree and amount of care for her own safety (*Hatzakorzian* v. *Rucker-Fuller Desk Co., supra; Hollowell* v. *Cameron,* 186 Cal. 530 [199 Pac. 803]). The question, therefore, of whether or not she was negligent in attempting to cross the street at the particular place and under the circumstances above related was also one of fact to be determined by the trial court, and the burden of showing that the decedent was negligent rested on appellant. █ As proof of such asserted negligence appellant relies mainly upon the testimony given by himself and one of his passengers to the effect that the decedent was looking in the direction of the approaching train and stepped backward into the pathway of the automobile. It is evident from this testimony, however, that the conduct of the decedent was under their observation for only a fraction of a second before the impact, and in the absence of any evidence showing that immediately prior thereto she did not exercise the requisite amount of care to look in both directions for approaching vehicles, the presumption of law is that she did (*Hollowell* v. *Cameron, supra; Hatzakorzian* v. *Rucker-Fuller Desk Co., supra*); and with reference to the claim that the decedent stepped backward, it may be reasonably inferred from all of the circumstances attending the accident that the decedent saw the approach of appellant's automobile as it was headed down the east-bound tracks and believing that it would continue on a straight course and pass in front of her, she stepped backward so as to get out of the line of its travel, and that just as she was in the act of doing so appellant, without giving any warning indicating he was about to change his course, suddenly swerved to the south and collided with her, in which case she would not be guilty of contributory negligence. In this respect the case is essentially the same in principle as *Porter* v. *Back Country Transp. Co.,* 33 Cal. App. 24 [164 Pac. 342]; *Park* v. *Orbison, supra,* and *Haines* v. *Fewkes,* 190 Cal. 477 [213 Pac. 490], and in our opinion must be governed by the law declared therein.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.