SHAW, P. J.
 

 The defendant appeals from a judgment convicting him of violating section 476 of the Vehicle Code. The part of that section here involved reads: “Whenever traffic is controlled by official traffic control signals exhibiting the words ‘Go/ ‘Caution/ or ‘Stop/ or exhibiting different colored lights successively, one at a time, or with arrows, the following colors only shall be used, and said terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
 

 “ (a) Green alone or ‘Go.’
 

 “1. Vehicular traffic facing the signal shall proceed straight through or may turn right or left or make a semicircular or U turn unless a sign at such place prohibits any such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.” More specifically the charge is that defendant violated the requirements of the last sentence just quoted by failing to yield the right of way to a pedestrian lawfully in an adjacent crosswalk.
 

 The evidence for the prosecution shows that the defendant, driving west on Pico Street, stopped his car at Vermont Avenue to wait for the signal. When the signal light changed to green for him he started slowly and at the same time a pedestrian °a.stbound in the south crosswalk of Pico
 
 *Supp. 821
 
 Street left the curb and proceeded east across the intersection. Defendant made a left turn to
 
 go
 
 south on Vermont Avenue, and when his ear entered the crosswalk, the pedestrian, who was then 20 feet out in the street, looked up and stopped. Defendant’s car went through the crosswalk, missing the pedestrian by about a foot. Had the pedestrian continued walking, instead of stopping, he would have hit the side of defendant’s car. This evidence, taken alone, would support the conviction, under our views of the law, as hereinafter stated; but other evidence which presents a different picture, and an erroneous declaration of the trial court as to the law applicable to it, lead us to a reversal of the judgment.
 

 The defendant and two passengers in his car agreed in testifying that defendant's car was already in the crosswalk when the pedestrian stepped off the curb, that the defendant then stopped his car, and that the pedestrian stopped about 1 foot from the curb and several feet from defendant’s car and motioned for the defendant to go on. The defendant then drove on past the pedestrian.
 

 The requirement of section 476 of the Vehicle Code is that vehicular traffic “yield the right of way . . . to pedestrians.” The term “right of way” is defined in section 87 of the Vehicle Code as “the privilege of the immediate use of the highway.” A privilege is “an advantage; an option; ... a peculiar benefit, favor, or advantage.” (50 C.J. 400.) It is “ ‘a right . . . not enjoyed by all, a special right or power conferred or possessed by one or more individuals, ’ ” and when used with reference to an official power it “imports a discretionary power.”
 
 (Cope
 
 v.
 
 Flannery
 
 (1925), 70 Cal.App. 738, 747 [234 P. 845].) “In its natural meaning, the word privilege may be defined as a right peculiar to an individual or body.”
 
 (Sacramento O. etc. Home
 
 v.
 
 Chambers
 
 (1914), 25 Cal.App. 536, 542 [144 P. 317].) The right of way is not, then, a duty which the pedestrian must exercise, but something which may be waived; it comes within the rule of section 3513, Civil Code, that “Anyone may waive the advantage of a law intended solely for his benefit.”
 

 “A waiver is an intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances indicating an intent to waive.”
 
 (Bastanchury
 
 v.
 
 Times Mirror Co.
 
 (1945), 68 Cal.App.2d 217, 240 [156 P.2d 488].) “Waiver always
 
 *Supp. 822
 
 rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts.”
 
 (Roesch
 
 v.
 
 De Mota
 
 (1944), 24 Cal.2d 563, 572 [150 P.2d 422].) “Waiver is ordinarily a question of fact. ’ ’
 
 (Lyons
 
 v.
 
 Brunswiek-Balke etc. Co.
 
 (1942), 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R 1173].) Under the rule of the eases above cited, circumstances will not suffice to establish a waiver of the right of way unless they show an
 
 intention
 
 to relinquish it. This will not appear from a mere showing that a pedestrian whose course is likely to intersect that of a vehicle at a crosswalk hesitates, stops, jumps back or does any other act apparently impelled by uncertainty as to the safe course or desire to escape impending danger. But here the defendant’s showing is that the pedestrian stopped at a place safely out of the way of defendant’s vehicle and at a time when defendant could easily have yielded the right of way, and then and there signalled to defendant to go on. Such conduct could well be found to constitute a waiver of the right of way. It was, therefore, important to the defendant that the jury be properly informed as to the law applicable to the evidence presented by him.
 

 After such a waiver by a pedestrian, the law does not require the driver to wait for the pedestrian to change his mind and pass in front of the vehicle, or to stop and attempt to argue the pedestrian into taking the right of way or lead him across in front of the vehicle. Such a procedure could only serve to hinder and delay other traffic, without any corresponding benefit to the pedestrian, and certainly should not be read into a law whose terms do not plainly require such interpretation. See
 
 People
 
 v.
 
 McLachlan
 
 (1939), 36 Cal.App.2d Supp. 754, 758 [93 P.2d 280], where, under the similar provision of section 560 of the Vehicle Code requiring a driver to “yield the right of way” to a pedestrian in a crosswalk, we held that “when a pedestrian crossing a roadway in a crosswalk is so far from the path of an approaching automobile and proceeding in such a manner that no interference between them is reasonably to be expected, the driver of the automobile need not wait for it to develop.”
 

 The trial here took an unusual course, for the defendant, in addition to giving his version of the facts of this case, testified to a subsequent experience in which he stopped for another pedestrian he encountered, who stepped off the curb, “walked back and motioned me on.” Thereupon a traffic officer asked defendant “what are you.doing,” the defendant
 
 *Supp. 823
 
 replied “I am waiting for the pedestrian,” and the officer threatened him with a citation for interfering with traffic if he did not go on. Defendant further asked the officer “Is that the law?” and the officer said “Yes, do as you are told.” After this testimony by the defendant, the following colloquy occurred between the defendant and the court: ‘ ‘ The Court: That is where you found out what the law was ? The Witness: I know the law. The Court: What do you mean ? The Witness : I mean as a layman. The Court: Now, this pedestrian at Hollywood and Vine you say walked back and got on the curb ? The Witness: He did not walk back on the curb, he jumped back, he was almost up to the middle. I stopped. The pedestrian stepped back in the other lane and motioned me to go on. The Court: If some police officer told you that was the law, he didn’t know what the law was.”
 

 This statement of the court in the presence of the jury was the only information they ever received as to the law applicable to the facts stated by defendant and his witnesses, and it was plainly erroneous. When the court instructed the jury, it merely read to them the part of section 476, Vehicle Code, which we have above quoted, without any explanation as to its proper interpretation in such a case as was presented by defendant’s evidence. It is true, the defendant, who appeared without counsel both in the trial court and in this court, did not request any further instructions; and it may be that if this remark had not been made by the trial court, we would conclude that, in the absence of such request, the court was not required to give further instructions than the words of the statute. But we must note that two witnesses, besides the defendant, testified to his version of the facts, and the police officer, who was the only witness for the prosecution, did not deny that the pedestrian motioned the defendant to go on. Such a situation occurs so frequently that no jury would be likely to regard testimony depicting it as inherently incredible. It seems quite probable that, had the jury been instructed that the law is as we have above stated it, instead of hearing only the contrary statement made to the defendant, they would have regarded defendant’s defense as established and returned a verdict accordingly.
 

 The judgment is reversed, and the cause is remanded for a new trial.
 

 Bishop, J., and Stephens, J., concurred.