[Civ. No. 22845. Second Dist., Div. Two. June 4, 1958.]

FLORINE HOLMAN, Appellant, v. PAUL E. VIKO,
Respondent.

[Civ. No. 22846. Second Dist., Div. Two. June 4, 1958.]

GIUSEPPE F. GOTTA, Appellant, v. PAUL E. VIKO,
Respondent.

Zeman, Hertzberg & Schekman for Appellants.

Parker, Stanbury, Reese & McGee and Kenneth R. Garrett for Respondent.

ASHBURN, J.—Appeals from judgments for defendant in two companion personal injury actions. The cases were tried together before a jury and plaintiffs base their appeals upon alleged errors in instructions. Counsel claim error (1) in instructing the jury that violation of section 80.39 of Los Angeles Municipal Code would constitute negligence *per se,* and (2) in refusing to give an instruction on the last clear chance doctrine. We have concluded that there was reversible error in the instruction based upon the municipal ordinance, but no error in refusal of a last clear chance instruction.

The accident occurred while plaintiffs were crossing Ninth Street in the city of Los Angeles near the middle of the block between Alvarado Street and Westlake Avenue, on November 13, 1955. They were not within any crosswalk. One of the plaintiffs and another witness testified that appellants were crossing the street diagonally. The court instructed the jury concerning the State law as follows: ''You are instructed that Section 562(a) and (b) of the Vehicle Code of the State of

California on the date of the accident provided as follows: 'Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.' 'The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway.' '' Upon the ordinance provision it instructed in these words: ''You are instructed that Section 80.39 of the Los Angeles Municipal Code in effect on the date this accident occurred provided that: 'No pedestrian shall cross a roadway at any place other than by a route at right angles to the curb, or by the shortest route to the opposite curb except in a marked crosswalk.' ... Conduct which is in violation of Section 80.39 of the Los Angeles Municipal Code and Section 671 of the Vehicle Code of the State of California, just read to you, constitutes, in itself, negligence. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he was negligent. ...''

Appellants' contention is that the field is covered by the State law as expressed in the Vehicle Code and hence the ordinance is void. Section 458 of the code provides: ''The provisions of this division are applicable and uniform throughout the State and in all counties and municipalities therein and no local authority shall enact or enforce any ordinance on the matters covered by this division *unless expressly authorized herein.*'' (Emphasis added.) In 1943 section 459.1 was added to the code. It reads: ''Local Regulation of Pedestrians and Turning Movements. (a) The provisions of Chapter 10 of Division 9 of this code regulating pedestrians shall not be deemed to prevent local authorities, by ordinance, from adopting ordinances prohibiting pedestrians from crossing roadways at other than crosswalks. (b) The provisions of Chapter 8 of Division 9 of this code regulating the turning of vehicles shall not be deemed to prevent local authorities, by ordinance, from prohibiting the making of any turning movement by any vehicle at any intersection or between any designated intersections.''[1]

Before the enactment of section 459.1 it became settled law that sections 562 and 563, Vehicle Code,[2] had preempted the

---

[1]Subdivision (b) was amended in 1947 by adding the words ''or between any designated intersections.''

[2]Veh. Code, § 562: ''Crossing at Other Than Crosswalks. (a) [*Yielding of right of way to vehicles.*] Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked

field of regulation of the subject of crossing streets between intersections. In *Pipoly* v. *Benson* (1942), 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515] the court dealt with section 80.38, Los Angeles Municipal Code, which prohibited crossing in a central traffic district or any business district other than by crosswalk. It was held that the regulation of traffic upon the streets of a city is not a municipal affair and that such an ordinance as section 80.38 is invalid because the field has been occupied by State legislation. At page 370 the court said: "Regardless of whether there is any actual grammatical conflict between an ordinance and a statute, the ordinance is invalid if it attempts to impose additional requirements in a field which is fully occupied by the statute. Thus, it has been held from an early date that an ordinance which is substantially identical with a state statute is invalid because it is an attempt to duplicate the prohibition of the statute." At page 371: "Where the statute contains language indicating that the Legislature did not intend its regulations to be exclusive, the general rule permitting additional supplementary local regulations has been applied. (*In re Iverson, supra,* p. 588 [199 Cal. 582 (250 P. 681)] ; *Natural Milk Prod. Assn.* v. *San Francisco, ante,* p. 101 [124 P.2d 25] ; *In re Simmons, supra,* p. 593 [199 Cal. 590 (250 P. 684)].) Conversely where the statute contains express provisions indicating that the Legislature intends its regulations to be exclusive within a certain field, the courts have given effect to this intention." After quoting section 458, Vehicle Code, the court said at page 372: "The regulation of pedestrian traffic in its use of the public roadways, however, is not a matter concerning which express authorization has been given for local regulation." And at page 375: "For the reasons set forth herein, we conclude that section 80.38 of the Municipal Code of Los Angeles must be held to be unconstitutional since it conflicts with the Vehicle Code by attempting to legislate upon a subject intended to be covered fully by an act of the Legislature. The instruction given by the trial court which was based upon the provisions of the Los Angeles ordinance, therefore, was errone-

crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. (b) [*Duty of driver to exercise care.*] The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

Veh. Code, § 563: "Pedestrians Between Controlled Intersections. Between adjacent intersections controlled by traffic control signal devices or by police officers pedestrians shall not cross the roadway at any place except in a crosswalk."

ous and since it conflicted with the instruction based upon the provisions of the Vehicle Code, the error requires a reversal of the judgment.'' The court distinguished *Quinn* v. *Rosenfeld,* 15 Cal.2d 486 [102 P.2d 317], as follows: ''Defendants also rely upon our decision in *Quinn* v. *Rosenfeld, supra,* but the local ordinance there involved was not the basis for the decision. No instructions to a jury were involved in that case, and the decision concluded that since the ordinance made no attempt to prohibit the plaintiff's conduct, it was unnecessary to decide whether the ordinance was invalid on the ground that it related to a matter covered by division IX of the Vehicle Code. (*Quinn* v. *Rosenfeld, supra,* p. 490.) The case was decided solely with reference to the provisions of the Vehicle Code and is not in conflict with our conclusions herein.'' (P. 374.)

*Fuentes* v. *Ling* (1942), 21 Cal.2d 59 [130 P.2d 121], makes the same holding as Pipoly, *supra,* with reference to an ordinance in similar terms.

*Wilton* v. *Henkin* (1942), 52 Cal.App.2d 368 [126 P.2d 425]. A local ordinance prohibited crossing in the business district except by crosswalk; it also prohibited crossing at any place except by a route at right angles to the curb or by the shortest route to the opposite curb. The court held that the first mentioned provision (like the one involved in the Pipoly case, *supra*) was void because the field was governed by the Vehicle Code. The opinion does not expressly rule upon validity of the prohibition of diagonal crossing.

*Stricklin* v. *Rosemeyer* (1942), 52 Cal.App.2d 558 [126 P.2d 665], dealt with an ordinance providing: '' 'It shall be unlawful for any person to be in any roadway other than a safety zone or crosswalk; provided that this provision shall not be construed to prevent the necessary use of a roadway by a pedestrian.' '' (P. 561.) This was held to be invalid under the doctrine of the Pipoly case, *supra.*

*Ryan* v. *San Diego Elec. Ry. Co.* (1942), 52 Cal.App.2d 460 [126 P.2d 401], dealt with an ordinance substantially the same as the one declared void in Pipoly and of course made the same ruling.

*Nosbonne* v. *Brill* (1942), 53 Cal.App.2d 436 [128 P.2d 57], held a similar ordinance to be invalid.

In view of the declaration of section 458 quoted *supra,* the aggregate effect of the above cited cases is the establishment of a rule that the Vehicle Code has preempted the field of regulation of crossing a roadway at or between intersections

except to the extent that local legislation is "expressly authorized" by the Vehicle Code.

Following the Pipoly and other cases, *supra*, the Legislature passed in 1943 section 459.1. It expressly permits local regulation which (1) prohibits pedestrians from crossing roadways except at crosswalks, and (2) as amended in 1947 prohibiting any turning movement by any vehicle between designated intersections. The Legislature is presumed to have been familiar with existing statutes and court rulings. (*Estate of Simpson,* 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991]; *Buckley* v. *Chadwick,* 45 Cal.2d 183, 193 [288 P.2d 12, 289 P.2d 242]; *Freeman* v. *Jergins,* 125 Cal.App.2d 536, 552-553 [271 P.2d 210].) It specifically authorized local ordinances wholly prohibiting crossing between intersections by pedestrians. Section 562 impliedly authorizes crossing between intersections subject only to an obligation to yield the right-of-way to approaching vehicles. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82, 95 [239 P. 709, 41 A.L.R. 1027]; *Broedlow* v. *LeGros,* 88 Cal.App. 671, 676 [263 P. 1027]; *Jacoby* v. *Johnson,* 84 Cal.App.2d 271, 274 [190 P.2d 243].) It cannot be said that regulation of manner of crossing was expressly authorized by section 459.1. An implication to that effect is not enough to satisfy section 458. Had it been the intention of the Legislature to open to local control the entire subject of crossing between intersections, it would have been an easy matter to say so. On the contrary, the new section was carefully limited to local prohibition of crossing by pedestrians and prohibition of turning movements by vehicles between intersections.

*Newton* v. *Thomas* (1955), 137 Cal.App.2d 748, 762 [291 P.2d 503] was decided after enactment of section 459.1. The local ordinance forbade (a) crossing in the business district other than by crosswalk, (b) standing in the roadway so as to interfere with traffic (§ 40), (c) crossing other than by a route at right angles to the curb. The court held section 40 invalid under the doctrine of the Pipoly case, *supra*.

We conclude that it remains the law as declared in Pipoly, *supra*, that use by pedestrians of roadways between intersections is a subject which has been preempted by State statute, subject only to exceptions expressly (not impliedly) declared by the Legislature; that section 80.39 of the Los Angeles Municipal Code is not within one of those exceptions and hence is void.

■ The giving of instructions upon section 562, Vehicle Code, and said ordinance, created a conflict which requires a reversal. On this subject the Pipoly decision, *supra,* says: "The decisive issue presented by this appeal, therefore, is whether the Los Angeles ordinance regulating the conduct of pedestrians at crosswalks is in conflict with the provisions of the Vehicle Code and is for that reason invalid. If so, the giving of conflicting instructions where one is based upon the provisions of an invalid ordinance clearly constitutes error." (*Pipoly* v. *Benson, supra,* 20 Cal.2d 366, 369.) As will be seen from the discussion of last clear chance, *infra,* the instruction upon the ordinance was especially prejudicial here for it supplied one of the elements necessary to a last clear chance instruction, negligence upon the part of plaintiffs in getting into a position of danger.

■ Concerning the applicability of the last clear chance rule to the facts shown by the record before us, we hold that there was no error in the refusal of such an instruction.

■ The doctrine of last clear chance is but one phase of the concept of proximate cause, designed to relieve a negligent plaintiff from the consequences of his own carelessness in those instances where defendant has had in fact a last clear chance to avoid the accident. ■ "The only purpose of the last clear chance doctrine is to relieve the injured party from the rigid application of the rule that contributory negligence will bar his recovery, when the circumstances are such that it may be said that such party's negligence is a remote, rather than a proximate, cause of his injuries. (*Girdner* v. *Union Oil Co.,* 216 Cal. 197, 201-204 [13 P.2d 915]; *Center* v. *Yellow Cab Co.,* 216 Cal. 205, 207-208 [13 P.2d 918].) In other words, the last clear chance doctrine is but a 'phase of the doctrine of proximate cause' in its relation to the negligence of the injured party who seeks to invoke it." (*Sparks* v. *Redinger,* 44 Cal.2d 121, 124 [279 P.2d 971].) ■ "As was said in the Center case at pages 207-208: 'The doctrine of (plaintiff's) continuing negligence has no application unless the negligence is the proximate cause of the injury. ■ *If all the elements of the doctrine of the last clear chance are present and plaintiff's negligence becomes remote in causation, then the doctrine applies.* If, on the other hand, any of the elements of the doctrine are lacking, courts have declared, and rightfully so, that plaintiff's negligence being continuous and contributory with that of defendant bars a recovery.' (Emphasis added.)" (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477,

488 [283 P.2d 1].) To the same effect, see *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 201-203 [13 P.2d 915].

 The application of the rule presupposes negligence on plaintiffs' part. (*Sparks* v. *Redinger, supra,* 44 Cal.2d 121, 124; *Selinsky* v. *Olsen,* 38 Cal.2d 102, 105 [238 P.2d 645]; *Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 293 [246 P.2d 663]; 35 Cal.Jur.2d, § 258, p. 802.) The rule does not apply if any of its elements is absent. (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 483 [283 P.2d 1].)

 The latest authoritative statement is found in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432]: ''The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.'' The context shows, we think, that the phrase ''that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger'' does not contemplate negligence occurring after plaintiff gets into a position of danger but, as stated in *Sparks* v. *Redinger, supra,* 44 Cal.2d 121, presupposes that negligence of plaintiff got him into a position from which he could not extricate himself through exercise of ordinary care. At page 740 of Brandelius, *supra,* it is said: ''The formula, as reiterated in the recent cases in three numbered subdivisions, reads as follows: '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape.'' Immediately following the restatement of the formula is this explanation: ''In restating the formula, it has

not been our purpose to add to or detract from the conditions prescribed in the approved formula set forth in the Girdner case and reiterated in our recent decisions. On the contrary, the main purpose has been to state more clearly the vital time element involved in the application of the doctrine." (P. 743.)

 The accident happened on November 13, 1955, about 2:15 a. m. Plaintiffs had walked east from Alvarado on the north side of Ninth Street some 140 to 150 feet. They were looking for the residence of a friend in an apartment house on the south side of the street near the center of the block. Having recognized it they started across the street and were hit by defendant's eastbound automobile when they had passed a few feet beyond the double white line in the center of the street. The transcript contains three versions of this accident, none of which presents all the elements of last clear chance.

First is that of defendant, called as a witness under section 2055, Code of Civil Procedure. (Defendant called no witnesses in his own behalf.) His testimony was substantially as follows. He was driving east on Ninth Street in the lane next the double white line; his car, a 1953 Mercury, had good brakes in good order, and also a horn. He first saw plaintiffs when he was about 10 to 20 feet east of the intersection. They were at or near the north curb and seemed to hesitate; when he saw them he reduced his speed from 20-25 miles an hour to 15-20 miles. He continued to watch plaintiffs who had their heads directed toward him and were aware of his proximity; he thought they were waiting for him; his speed was then increased to 25 miles, but when he was about 50 feet west of the point of impact plaintiffs suddenly dashed across in front of him; he immediately applied his brakes, laying down 10 to 20 feet of skid mark but was unable to avoid the accident, although he swerved to the right some two to four feet. He struck plaintiffs at about the center of his eastbound lane or about five feet south of the double line; his car went some 10 to 20 feet beyond the point of impact. Plaintiffs were lying just in front of his car when it stopped.

There was no last clear chance here for plaintiffs, near the north curb or on the north half of the street, were in no danger until they began to run across the street; as soon as they did so defendant did all he could to avert an accident but was unable to avoid one. It was to emphasize the time element of last clear chance that the formula was restated in Brandelius, *supra.* In the Doran case, *supra,* 44 Cal.2d 477, 487, the author of the Brandelius opinion also said: "The under-

lying basis for the application of this doctrine, which permits an injured person to recover despite his continuing and contributory negligence, is that defendant was afforded a *last* chance and a *clear* chance to avoid the accident *after* defendant had discovered that plaintiff was in a helpless situation.'' And at page 488: ''But the chance which is afforded to defendant must be something more than a bare possible chance. It must be not only a *last* chance but a *clear* chance, following actual knowledge of plaintiff's helplessness, to avoid the accident by the exercise of ordinary care; and, by its very terms, the doctrine excludes from its application any case in which plaintiff's state of helplessness, resulting from his own negligence, is created so nearly simultaneously with the happening of the accident that neither party may be fairly said to have thereafter a last clear chance to avoid the accident.''

Plaintiffs were substantially agreed upon their version of the occurrence. Having seen the apartment they were looking for they stopped at the north curb, looked east and saw that no cars were approaching from that direction; looked right and saw defendant's car stopped on the west side of Alvarado waiting for the traffic light to turn in his favor. No other cars were to be seen. They concluded it was safe to cross the street and walked 15 feet into it (the total width was 50 feet); there they stopped, looking toward defendant's car; they then walked five more feet and stopped again; defendant had slowed almost to a stop and with his arm outside the window waved his hand back and forth in a manner which plaintiffs thought to be an invitation to cross in front of him; immediately before he did this plaintiff Holman saw a red reflection from the back of his car which would indicate application of the brakes. The car was then 70 to 75 feet away and plaintiffs were four to five feet north of the double line. When they saw defendant's signal to cross they started to do so at a fast walk. Mrs. Holman testified: ''Well, when I felt that we were —he was going to give the right of way, I hurried across. . . . Well, when I knew it was safe enough, I started to hurry across to the other side of the curb. Q. You started doing this when he was about seventy, seventy-five feet away from you, right? A. Yes. Q. When you say 'hurry' then did you increase your speed from what you had been going? A. Yes. I hurried; I didn't run. Q. What did you mean, a real fast walk— A. That's right. Q. —or would you describe it as a 'trot'? A. No. Q. Just a real fast walk? A. Just 'walk.' ''

Mr. Gotta: "Q. Indicating with your left hand going from the left to the right, is that right? A. Just like that (indicating). Q. So, what did you do when you saw him do that? A. Doing that I have the right to cross. . . . Q. (By Mr. Schekman) Mr. Gotta, when you saw the man's hand move from left to right like you indicated, what did the car do? A. The car slowing down when he showed his hand, like say, 'Cross.' I crossed. . . . Q. And then you proceeded then to cross? A. Proceeded to walk to cross. . . . A. Then I saw the car slowing down, and I saw his arm, the left arm, outside of the car, was moving his arm like that (indicating). The Court: Left to right. A. Waving it left and right. So I figured, so he let me pass, so he give me the chance to pass when he was doing like that." When plaintiffs got into defendant's traffic lane they were struck immediately. While visiting plaintiff Holman in the hospital later, defendant was asked: "How come you hit us after we stopped?" and replied: "I thought I could get by you; and, so, I stepped on the gas."

This version affords no basis for a last clear chance instruction for it raises no inference of negligence on the part of either plaintiff. The court's instruction concerning Municipal Code section 80.39 erroneously supplied this element; that presumption having been removed by our ruling that the ordinance is invalid we look in vain for evidence of negligence on the part of plaintiffs. They were in no danger at all when on the north half of the street (there were no westbound cars in the vicinity); they stopped to permit defendant to pass them but, traveling very slowly, he waived his right-of-way when he invited them to go across ahead of him (see *People* v. *Noland,* 83 Cal.App.2d Supp. 819, 821-822 [189 P.2d 84]). They proceeded with expedition and would have crossed safely had defendant not suddenly and without warning accelerated his speed to a point where he could not avoid striking plaintiffs even by swerving to the south in front of them, as he tried to do. The element of negligence on the part of plaintiffs being absent, the rule of last clear chance could not apply.

Mrs. Dora Wilkerson, apparently a disinterested spectator, gave a third version of the occurrence. She was in a driveway on the south side of the street, headed north and almost opposite plaintiffs; she was waiting to enter Ninth Street. She saw plaintiffs at the curb about one-fourth of a block from the intersection; Gotta was on the curb and Mrs. Holman just off it; they were holding hands. Defendant, who had been traveling about 25 miles an hour, slowed down to approxi-

mately 10 miles; as plaintiffs took a few steps, about 5 feet from the curb, defendant came almost to a stop; his car was then about 25 to 30 feet from plaintiffs' line of travel. They hesitated, stopped, and suddenly started to run across the street; at the same instant the driver accelerated his car and ran into them. He then slammed on his brakes but it was too late to avoid the accident. The plaintiffs started to run and the car increased its speed at the same instant. This left no time for a last or any clear chance for defendant to avoid the accident. The situation falls within the Rodabaugh line of cases (*supra,* 39 Cal.2d 290). Therein the court quoted from a former opinion rendered by the same author in *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223, 232 [28 P.2d 932], as follows: " 'Like many other cases involving collisions between moving vehicles, the accident may be said to have happened within the twinkling of an eye after the first indication of danger. While the doctrine of last clear chance has been applied in certain exceptional cases involving collisions between moving vehicles, we are of the opinion that it should not be applied to the ordinary case in which the act creating the peril occurs practically simultaneously with the happening of the accident and in which neither party can fairly be said to have had a *last clear chance* thereafter to avoid the consequences. To apply the doctrine to such cases would be equivalent to denying the existence of the general rule which makes contributory negligence a bar to recovery.' " (P. 295.)

None of the three versions above summarized brings last clear chance into the situation. True, a jury is justified in accepting part of a witness' testimony while rejecting the remainder and, after repeating the process a number of times, may assemble the accepted fragments into a mosaic of truth which withstands the scrutiny of appellate review (*Bechtold* v. *Bishop & Co., Inc.,* 16 Cal.2d 285, 291-292 [105 P.2d 984]; *Estate of Pelton,* 140 Cal.App.2d 512, 516 [295 P.2d 483].) But we see no basis here for a last clear chance as a result of that process of evaluation of the evidence. Unquestionably plaintiffs were in no position of danger while on the north half of the street; they were still safe when they stopped a few feet north of the center line of the street. All witnesses agree that they were aware of the approach of defendant's car for they were watching it. They never arrived at a place of danger until they were in the eastbound lane and in defendant's line of travel. If they got there by his invitation they had a right in the exercise of ordinary care to assume that the

invitation would not be withdrawn without notice. But defendant sounded no horn and suddenly increased the speed of his car, trying to pass them. Thus, on the assumption of invitation to plaintiffs to cross, there was no room for last clear chance because there was no negligence on plaintiffs' part and they were not in any actual danger until defendant suddenly speeded his car and ran directly into them. The proximate cause of the accident in these circumstances would be defendant's negligence, but not on the basis of last clear chance, for one of its elements—negligence of plaintiffs—was lacking. Incidentally, the court adequately instructed the jury upon the general principles of proximate cause.

If it be inferred, as defendant claims, that plaintiffs suddenly started to run just as he increased his speed in an attempt to swing around in front of them, we have no last clear chance for the assumed negligence of both parties was simultaneous—the necessary time lag is wanting.

If plaintiffs were walking, slow or fast, across the south half of the street (as they claim), and the defendant did not wave them across (as he claims), they were in no danger until they were in defendant's line of travel; they were aware of his approach as all the evidence shows; they could always save themselves by stopping, as any pedestrian can do immediately (see *Holmes* v. *South Pac. C. Ry. Co.*, 97 Cal. 161, 170 [31 P. 834]), until they stepped into defendant's path when he was traveling so fast that he could not stop in time to avoid them. When that situation developed, if it did, there was no last clear chance because defendant had no chance at all.

Because of the error in giving the instruction upon the municipal ordinance, each of the judgments is reversed.

Fox, P. J., concurred.

HERNDON, J.—Concurring and Dissenting.

I concur in the judgment of reversal, but my conclusions with respect to the two controlling questions of law are directly opposite to those of the majority.

UPON THE EVIDENCE IN THIS RECORD, THE JURY COULD REASONABLY HAVE FOUND THE EXISTENCE OF EVERY ELEMENT ESSENTIAL TO THE APPLICATION OF THE DOCTRINE OF LAST CLEAR CHANCE.

Having in mind the well-established rule that in determining the applicability of the doctrine of last clear chance the court must view the evidence in the light "most favorable to the

contention that the doctrine is applicable," (*Selinsky* v. *Olson*, 38 Cal.2d 102, 103 [237 P.2d 645]; *Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614, 617 [255 P.2d 785].) I conclude from my survey of the record that appellants are clearly right in their contention that the jury should have been instructed on that doctrine.[1]

Preliminarily, I would point out what appear to me to be basic and demonstrable fallacies in the reasoning of the majority opinion, and in the method of evaluation which it applies to the evidence.

In the first place, the majority begin their process of determining the presence or absence of the elements essential to the application of the doctrine by placing the testimonies of the several witnesses in separate compartments, and by analyzing the contents of each compartment separately. However, the jury was entitled to utilize a very different process, namely, that of accepting such parts of the several testimonies as they found credible, and if the sum of the accepted parts included all the elements essential to the application of the doctrine, they had both the right and the duty to apply it in accordance with appropriate instructions. The majority opinion recognizes that the latter process of evaluation is the proper one, but conspicuously fails, it seems to me, to give it anything approaching adequate employment in this case.

In the second place, in analyzing the testimony, the majority find missing therefrom any reasonable basis for the essential finding that plaintiffs by their own negligence had gotten into a position of peril from which they were unable to escape by the use of ordinary care. On this point, the majority have the following to say concerning plaintiffs' version of the facts: "This version affords no basis for a last clear chance instruction for it raises no inference of negligence on the part of either plaintiff. The court's instruction concerning Municipal Code, section 80.39 erroneously supplied this element; that presumption having been removed by our ruling that the ordinance is invalid, we look in vain for negligence on the part of plaintiffs."

I shall assume for the purposes of this discussion that the majority are right in their holding that municipal code, section 80.39 is void and, therefore, that plaintiffs' diagonal

---

[1]Compare *Hensley* v. *Sellers*, 160 Cal.App.2d 117 [324 P.2d 954], (decided May 5, 1958) wherein refusal to instruct on the doctrine of last clear chance was held reversible error in a case presenting a factual situation less favorable to its application.

crossing of the street could not be considered negligent as a *matter of law*. But surely it does not follow that the jury could not have found that such conduct, under the circumstances appearing, was negligent *as a matter of fact*. In enacting section 80.39 of the municipal code (albeit a void ordinance because of its supposed invasion of a field fully preempted by the state) the Los Angeles City Council clearly expressed its view that a diagonal crossing of streets by pedestrians outside marked crosswalks was such a dangerous procedure (at any time of day) that it ought to be prohibited. Thus, the intent was to render such conduct unlawful, and, therefore, negligent as a matter of law. Apart from the question of validity, I think no one would contend that the council's view was unreasonable. But casting aside the ordinance as void, would anyone assert that a jury could not reasonably find the same conduct to be negligent as a *matter of fact,* especially in the dark of night and under all the circumstances appearing in the instant case?

A third fallacy in the majority opinion is that it defines the zone of danger too narrowly in holding that " [T]hey [plaintiffs] never arrived at a place of danger until they were in the eastbound lane and in defendant's line of travel.'' This idea proceeds on the mistaken assumption that the line of travel of defendant's vehicle was fixed and predetermined like that of a streetcar following the course of its rails. There were various lines of travel that the defendant might have selected during the time he travelled the distance of 40 to 75 feet (as he testified) after he saw plaintiffs start to run across the street and before he struck them.

The jury could well have believed quite realistically that plaintiffs were in peril from the instant they had committed themselves to their decision to cross ahead of defendant's vehicle, at whatever point in the street they made that decision. And, in view of the conflicts in the testimony of the several witnesses, the jury might have placed that point almost anywhere in the northerly half of the street.

In the fourth place, the majority err in holding that the only basis for finding that plaintiffs were in a position of helpless peril due to their own negligence was the testimony to the effect that they crossed by a diagonal path. I submit, on the contrary, that the jury might reasonably have found: (a) that plaintiffs were negligent in attempting under the circumstances to cross ahead of defendant's car *at any angle;* (b) that their negligence continued to operate as a *circumstantial*

factor (as distinguished from a proximate cause) whether defendant did or did not signal them an invitation to cross ahead of him; and (c) that plaintiffs became wholly unable to escape at a time when defendant, being well aware of their helpless peril, yet had ample time either to slow down, stop, or so change his direction of travel as to avoid hitting them.

It is, of course, well understood that the purpose of the last clear chance doctrine is "to relieve the injured party from the rigid application of the rule that contributory negligence will bar his recovery, when the circumstances are such that it may be said that such party's negligence is a remote rather than a proximate cause of his injuries." (*Sparks* v. *Redinger*, 44 Cal.2d 121, 124 [279 P.2d 971]; *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 201-204 [13 P.2d 915].) And I agree that in this case plaintiffs' continuing and contributory negligence would bar their recovery unless the elements of the doctrine of last clear chance were found to be present so as to render plaintiffs' negligence *"remote in causation."* (*Center* v. *Yellow Cab Co.*, 216 Cal. 205, 207-208 [13 P.2d 918].) The majority opinion does not discuss the pedestrian cases primarily relied upon by appellants—cases sufficiently similar in their factual situations to constitute persuasive precedents: *Cole* v. *Ridings*, 95 Cal.App.2d 136 [212 P.2d 597] and *Lebkicher* v. *Crosby*, 123 Cal.App.2d 631 [267 P.2d 361]. I think the majority decision is not consistent with those last cited.

Applying the formula as restated in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, at page 743 [306 P.2d 432], and viewing the evidence in a light favorable to the application of the doctrine, I submit that the jury would have been entitled to find the facts, ultimate and evidentiary, as suggested in the following summary:

(1) Plaintiffs were in a position of danger, and, by their own negligence, became unable to escape from such position by the use of ordinary care, either (a) because it became physically impossible for them to escape, or (b) because they were totally unaware of the danger.

That plaintiffs got into a position of danger is too obvious to argue, whether the danger zone was as narrow as the majority defines it, or much wider as I think the jury might have viewed it. And they got into it *negligently* for any of several factual reasons that the jury might have found, including (a) proceeding in a southeasterly direction with their backs toward the approaching car, they took a longer diagonal course when

a shorter direct course might have enabled them to get safely across ahead of defendant's car; or (b) they were negligent in attempting, under the circumstances, to run across the street ahead of defendant's car at *any* angle and regardless of whether defendant did or did not signal them to proceed.

Thus, by their own negligence, plaintiffs got into this position of danger, and by their own negligence became unable to escape from it (a) because after they negligently got into defendant's line of travel, it was physically impossible for them to move fast enough in either direction to escape, particularly in view of the much greater, *and rapidly increasing,* rate of speed at which defendant's car was advancing upon them, or, in the alternative, (b) because they were totally unaware of the danger from and after the time when they saw defendant's signal which they interpreted as a yielding of the right of way, or (if no such signal was given) from the time they observed defendant slowing down so perceptibly that they assumed he was in the process of stopping to yield the right-of-way which plaintiffs were negligently violating.

(2) Defendant knew that plaintiffs were in a position of danger, and further knew, or in the exercise of ordinary care should have known, that plaintiffs were unable to escape therefrom.

According to his own testimony, defendant was aware of plaintiffs' position of peril when he was still at a distance from them which he thought might have been as great as seventy-five feet. The following is a part of his testimony: "I applied my brakes when I first saw them start across, forty to sixty-five, seventy-five feet from the point of impact. . . . Well, there's a certain amount of reaction time. In that time, from the point of impact I decided that they were running across and I should apply my brakes. So at that time I did."

That defendant knew, or should have known, that plaintiffs were unable to escape could be inferred from any of several permissible assumptions of fact, all supported by substantial evidence: (a) that defendant signalled to plaintiffs to proceed and by this means made it a practical certainty that they would cross the path of his vehicle without further attention to it in the belief that he was stopping to yield the right of way; or (b) that when defendant saw plaintiffs start to run across his line of travel with their backs partially turned (when he was as far as seventy-five feet away) he knew, or should have known from their behavior that they were unaware of their peril, or even if they were aware of their

peril, that it was too late for them to escape by any means then available to them because of the speed at which he was travelling.

(3) After defendant saw plaintiffs in their position of peril, and after he had knowledge of their inability to escape, he had the last clear chance to avoid the accident by the exercise of ordinary care, but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.

Defendant's testimony that he undertook to apply his brakes when he was at a distance from the point of impact, which he estimated as being possibly 75 feet (between 40 and 75), would support a finding that he was aware of plaintiffs' position of danger when he was still far enough from them to enable him in the exercise of ordinary care to slow down, stop, or avoid plaintiffs by a suitable change of direction. Especially significant at this point is the following testimony of plaintiff Holman concerning her conversation with defendant, when defendant went to visit her in the hospital: "I said, 'How come you hit us after we stopped?' And his words to me were: 'I thought I could get by you and so I stepped on the gas.'"

If the jury believed that defendant signalled plaintiffs to proceed. thus indicating his intention to yield the right-of-way. it would follow that defendant necessarily knew, or should have known, that plaintiffs from that point would be unaware of any further threat of danger from his vehicle.

But if the jury believed that no such signal was given by defendant, there was the testimony of the witness Wilkerson to the effect that defendant, after bringing his car almost to a complete stop, suddenly accelerated to about 25 miles per hour. This testimony alone, with the inferences that might legitimately be drawn from it, would supply all the requirements of the third subdivision of the Brandelius formula. In short, defendant's last clear chance consisted of his ample opportunity to slow down, stop, or alter his course after he had actual knowledge of plaintiffs' position of helpless peril. But instead of continuing slowly, or stopping, he appeared suddenly to change his mind and accelerated his speed to such an extent that it became impossible for plaintiffs to escape.

It is not unlikely that other combinations of factual findings supportable by the evidence could be suggested under which the proper application of the doctrine of last clear chance would be even more clear.

Section 80.39 of the Los Angeles Municipal Code Is a Valid Ordinance and the Jury Was Properly Instructed That Its Violation Would Constitute Negligence.

I regard the question of the validity of the ordinance here under consideration as a close and debatable one. The question is important enough to deserve the most careful consideration. Obviously, it is a matter of great importance to local authorities to know exactly how far local ordinances regulating pedestrian traffic can be validly enacted and enforced.

The appalling number of pedestrians killed and maimed every year in the process of crossing our California streets and highways testifies eloquently to the need for regulations reasonably designed to promote safety. It is for this reason that I am quite hesitant to strike down as invalid the very sensible ordinance here under consideration. Moreover, I think the doctrine of preemption ought not to be pushed any further than necessary in this area in which the preservation of local power to accommodate traffic regulations to the peculiar requirements of local conditions is highly desirable.

The rules enunciated in *Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515], as I read them, provide ample support for the conclusion that the validity of the ordinance here in question should be sustained. The controlling question is posed by the following language, found at page 371 of the Pipoly decision:

*"The difficult question in such cases is whether the state law was intended to occupy the entire field. Where the statute contains language indicating that the Legislature did not intend its regulations to be exclusive, the general rule permitting additional supplementary local regulations has been applied."* (Emphasis added.)

The Pipoly decision struck down municipal code section 80.38 on the basis of a conclusion that the Legislature had intended the provisions of the Vehicle Code relating to pedestrian traffic to be *exclusive*—had intended, in other words, to occupy the entire field.

At the very next session of the Legislature, the lawmakers enacted section 459.1 of the Vehicle Code, expressly authorizing local ordinances "prohibiting pedestrians from crossing roadways at other than crosswalks." Manifestly, this legislation was intended to *validate* the very type of ordinance which Pipoly had *nullified.* But beyond that, the lawmakers thereby in effect said this: *If it formerly was our intent to*

*occupy the entire field of pedestrian traffic regulation, we here-by declare that such no longer is our intent. If the Vehicle Code provisions relating to pedestrian traffic were formerly regarded as exclusive, we hereby declare that they should no longer be so regarded.* Thus, the Legislature swept away the basis for the exception to the well-settled general rule, which the Pipoly decision recognizes in the following language, at page 370:

''The applicable rule in these situations where state control is dominant has been stated as follows: 'Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purpose of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable.' (*Mann* v. *Scott, supra,* p. 556 [180 Cal. 550 (182 P. 281)].) The cases in this state have consistently upheld local regulations in the form of additional reasonable requirements not in conflict with the provisions of the general law. (*Mann* v. *Scott, supra; In re Hoffman,* 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75]; *In re Iverson,* 199 Cal. 582 [250 P. 681]; *In re Simmons,* 199 Cal. 590 [250 P. 684]; Grant, 'Municipal Ordinances Supplementing Criminal Laws,' [1936] 9 So. Cal. L. Rev. 95, 98.)''

It seems to me that the instant ordinance is so clearly consistent with all relevant general laws that to nullify it would be to disregard and violate section 11 of article XI of the Constitution of the State of California which provides:

''Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.''

The grant of municipal power contained in section 11 of article XI of our state Constitution ''is very broad and liberal.'' (*In re Holmes,* 187 Cal. 640, 645 [203 P. 398].) It has been held in numerous cases that the only limitation upon this constitutional grant of power is that its exercise may not conflict with general laws. (*Ex parte Lacey,* 108 Cal. 326, 328 [41 P. 411, 41 Am.St.Rep. 93, 38 L.R.A. 640]; *Odd Fellows' Cemetery Assn.* v. *City & County of San Francisco,* 140 Cal. 226, 230 [73 P. 987]; *In re Hoffman,* 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75]; *In re Iverson,* 199 Cal. 582 [250 P. 681]; *In re Sic,* 73 Cal. 142 [14 P. 405]; *In re Hong Shen,* 98 Cal. 681 [33 P. 799]; *Pasadena School District* v.

*City of Pasadena,* 166 Cal. 7, 9 [134 P. 985, Ann.Cas. 1915B 1039, 47 L.R.A.N.S. 892]; *In re Montgomery,* 163 Cal. 457, 460 [125 P. 1070, Ann.Cas. 1914A 130].)

I think the general effect of all the California decisions on the subject is quite accurately summarized in the following, from 35 California Jurisprudence 2d, pages 56-57, Municipal Corporations, section 234:

"Whether the legislature intended to undertake exclusive occupancy of a given field of legislation is determined, not by the language of the statute alone, but by consideration of the facts and circumstances on which the statute was intended to operate. The courts have shown little disposition to hold that action by the legislature in a given field, however extensive, precludes different action in the same field, even of a similar character, by cities. It seems that the only cases that hold that state regulation occupies a field so as to preclude ordinances that do not directly conflict with them are those where the legislature has expressly provided that there shall be no local regulation on the subject. But, as has been seen, a mere prohibition by the legislature of local regulation on a particular subject without any affirmative act on its part to occupy that field is ineffective. *Of course, provisions of state laws declaring that local regulations in the field shall be permitted, though not of themselves authorizing ordinances that actually conflict with state laws, are indicative of the legislative intention not to occupy the field, thus justifying local regulation in it."* (Emphasis added.)

I conclude that the intended effect of Vehicle Code section 459.1 is to authorize consistent local regulations relating to the conduct of pedestrians in crossing roadways outside crosswalks. The greater power *to prohibit* given conduct, which is expressly conferred by the statute, should be deemed to include the lesser consistent power *to regulate* or to place limitations or qualifications upon the legality of the same conduct. This is but an application of the legal maxim that "the greater contains the less." (Civ. Code, § 3536.)

Like the presumption in favor of the constitutionality of legislation, there is a well recognized presumption in favor of the validity of a municipal ordinance. (See generally, 35 Cal.Jur.2d 223, § 417; 18 Cal.Jur. 933, § 218.) As stated by this court, "An ordinance must be clearly obnoxious as unreasonable and oppressive to justify nullifying it by judicial decree. Since it is the right of a city to regulate its municipal affairs the courts must uphold such regulations unless it is

manifest that the ordinance transcends the power of the municipality. . . .'' (*City of Los Angeles* v. *Tannahill,* 105 Cal. App.2d 541, 546 [233 P.2d 671].)

The obvious conclusion from the foregoing is that I would reverse the judgment, not upon the ground stated in the majority opinion, but because of the trial court's error in refusing to instruct upon the doctrine of last clear chance.

